COMMONWEALTH of Pennsylvania

v.

Jennifer Ann FEDOREK, Appellant.

Superior Court of Pennsylvania.

Argued March 9, 2006.

Filed Dec. 7, 2006.

Jason R. Lewis, Public Defender, Franklin, for appellant.

James Carbone, Assistant District Attorney, Franklin, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., JOYCE, MUSMANNO, ORIE MELVIN, TODD, KLEIN, BOWES, GANTMAN, and PANELLA, JJ.

**OPINION BY FORD ELLIOTT, P.J.:**

¶ 1 Jennifer Ann Fedorek appeals from the judgment of sentence entered following her conviction for disorderly conduct graded as a third degree misdemeanor pursuant to 18 Pa.C.S.A. § 5503(b). We certified this appeal for consideration *en banc* and now address the following issue: whether the Commonwealth must prove beyond a reasonable doubt that a defendant charged with disorderly conduct, graded as a misdemeanor of the third degree intended to cause substantial harm *to the public* or serious inconvenience *to the public?* We answer this question in the affirmative and reverse appellant's judgment of sentence.

¶ 2 The underlying facts may be summarized as follows. On the evening of May 22, 2003, Dennis Scott Martin (hereinafter "the victim") was at the Polish National Alliance Club (hereinafter "the Club") in Oil City, Pennsylvania. (Notes of testimony, 3/12/04 at 6.) The victim, who was then the Club's president, was dating Patty Schmader (hereinafter "Patty"). Patty had recently been divorced from Jack Schmader (hereinafter "Schmader"), a former friend of the victim. (*Id.* at 6–7.) Earlier in the day, the victim and Patty shopped for supplies for the Club. Schmader called the victim's cellular phone seeking to inform Patty that their two children were locked out of her house and that he thought she should be at home. (*Id.* at 7–8.)

¶ 3 While at the Club later that evening, the victim saw Schmader, appellant, who is Schmader's sister,[1] and appellant's boyfriend, Eric Hutchinson (hereinafter

---

**1.** The record is unclear as to whether appellant is Schmader's sister or step-sister. (*See* notes of testimony, 3/12/04 at 25, 69, and 96.)

"Hutchinson"). The victim assumed that the three had come to the Club together. Schmader approached the victim and asked if the victim wanted to talk. The victim responded that if Schmader wished to talk, they could do so in the victim's office. (*Id.* at 10.) Schmader stated that they could talk outside, and all four left the bar. (*Id.* at 10–11.)

¶4 Once in the parking lot, Schmader began yelling at the victim about the victim's relationship with Patty and the children. Schmader repeatedly poked the victim in the chest as he yelled; he was eventually standing so close the victim could feel the spray of his saliva. (*Id.* at 11–12.) The victim continued to back away as Schmader advanced. In this fashion, the two men traversed the length of the Club and turned the corner toward the delivery entrance. (*Id.* at 12–13.) The victim testified that appellant stood behind Schmader yelling: "Come on, Jack, hurt him. F—— him up. Hurt him." (*Id.* at 12–13.) The victim also observed Hutchinson trying to calm appellant down.

¶5 The victim and Schmader continued to argue. When the victim interjected words questioning Schmader's ability as a parent, Schmader grabbed the victim about the shoulders and Hutchinson grabbed him around the neck; the victim began to have difficulty breathing and started to panic. (*Id.* at 13–14, 16.) Eventually, the victim fell to the ground where he hit his head and was kicked in the left side. (*Id.* at 14.) At some point, as the grip on his neck slackened, the victim called out for help. (*Id.* at 16–17.) He then saw appellant in the driver's seat of Schmader's Jeep; she had the driver's door open and was yelling for Schmader and Hutchinson to "get in and get the hell out of here." (*Id.* at 17.) Appellant,

Schmader, and Hutchinson left the scene in the Jeep.

¶6 For her role in the incident, appellant was charged with one count of simple assault graded as a second degree misdemeanor, one count of summary harassment, and one count of disorderly conduct graded as a third degree misdemeanor.[2] Hutchinson was similarly charged. Schmader pled guilty to simple assault, and all other charges against him were dismissed.

¶7 On March 12, 2004, appellant and Hutchinson were tried together before a jury. At the close of the Commonwealth's case, appellant made a motion for judgment of acquittal, arguing that the Commonwealth failed to prove appellant intended to harm the victim. (*Id.* at 77, 79.) The motion was denied. Schmader then testified for the defense that appellant and Hutchinson had not accompanied him to the Club on the night of the assault but had come independently looking for him. He also testified that when the assault occurred, appellant and Hutchinson were on the other side of the Club building and that he left the scene alone in the Jeep. (*Id.* at 100, 102, 104–105.)

¶8 After deliberation, the jury certified that it was hopelessly deadlocked as to both appellant and Hutchinson on the simple assault, and the trial court declared a mistrial on that count. (*Id.* at 132–133.) The jury, however, found both appellant and Hutchinson guilty of disorderly conduct. The trial court, reasoning that the summary harassment offenses merged with the disorderly conduct offenses, declared both appellant and Hutchinson not guilty of summary harassment.

¶9 Appellant filed a post-trial motion for

---

2. 18 Pa.C.S.A. §§ 2701, 2709, and 5503 respectively.

"judgment *non obstante veredicto*"[3] in which she again sought acquittal on the charge of disorderly conduct. Relying on this court's decision in *Commonwealth v. Smith*, 811 A.2d 578 (Pa.Super.2002), she argued that there was no evidence of her intent to cause substantial harm *to the public* or serious inconvenience *to the public;* thus, the conviction graded as a third degree misdemeanor could not stand. Appellant claimed that, at best, the Commonwealth had proven summary disorderly conduct. (Certified record at 18.) By order dated March 16, 2004, the trial court denied the post-trial motion.

¶ 10 On April 19, 2004, appellant was sentenced to intermediate punishment with conditions including supervision of up to six months, a $300 fine, 30 hours of community service, and restitution for the victim's medical costs. This appeal followed. At the trial court's direction and pursuant to Pa.R.A.P 1925(b), appellant filed a concise statement of matters complained of on appeal. On May 6, 2004, the trial court filed an opinion in support of its denial of appellant's post-trial motion.

 ¶ 11 On appeal, appellant questions the sufficiency of the evidence to support the conviction of disorderly conduct graded as a third degree misdemeanor. Specifically, she argues the Commonwealth did not prove that she had specific intent to cause substantial harm to the public or serious public inconvenience. We are thus presented with a preliminary issue of statutory interpretation. Statutory interpretation is an issue of law over which we exercise plenary review. *Commonwealth v. Magliocco*, 584 Pa. 244, 247, 883 A.2d 479, 481 (2005); *see also Commonwealth v. Dellisanti*, 583 Pa. 106, 112 n. 8, 876 A.2d 366, 369 n. 8 (2005) (recognizing that what

this court had treated as an issue of sufficiency actually presented a question of statutory construction).

¶ 12 The statute at issue, 18 Pa.C.S.A. § 5503, codifies the criminal offense of disorderly conduct and provides the following:

(a) **Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

(b) **Grading.**—An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

(c) **Definition.**—As used in this section the word 'public' means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any

---

**3.** We note that Pa.R.Crim.P. 720(B) provides for post-trial motions for judgment of acquit- tal and in arrest of judgment.

premises which are open to the public.

18 Pa.C.S.A. § 5503.

¶ 13 Appellant concedes that there is sufficient evidence to prove the *offense* of disorderly conduct.[4] Had this concession not been made, we would conclude that the offense itself is supported by sufficient evidence. *See Commonwealth v. Whritenour*, 751 A.2d 687 (Pa.Super.2000), *appeal denied*, 563 Pa. 701, 761 A.2d 550 (2000) ("Public" elements of offenses of public drunkenness and disorderly conduct were met, though road on which defendant was arrested was located in a private community; the community was "public," in that it consisted of residents of the homes of the community, their guests and employees, as well as visitors attending religious events, users of the public library, and delivery people, all of whom utilized the road); *See Commonwealth v. Young*, 370 Pa.Super. 42, 535 A.2d 1141 (1988) (affirming conviction for summary disorderly conduct where male appellant entered women's restroom in a dormitory and opened the stall occupied by female student), *appeal denied*, 518 Pa. 649, 544 A.2d 961 (1988); *Commonwealth v. Coolbaugh*, 272 Pa.Super. 491, 416 A.2d 563 (1979) (affirming conviction for summary disorderly conduct where appellant precipitated a scuffle between himself and another at night on an icy roadway which recklessly created risk of public inconvenience, annoyance, or alarm).

¶ 14 Appellant contends, however, that the evidence is sufficient only to prove summary disorderly conduct. Specifically, appellant claims the Commonwealth failed to prove she had the proper *mens rea* for the offense to be graded as a third degree misdemeanor. Appellant argues that, as interpreted by this court in *Smith, supra*, and the earlier decision in *Commonwealth v. Coon*, 695 A.2d 794 (Pa.Super.1997), in order for the offense to be graded as a third degree misdemeanor, the intent to cause "substantial harm or serious inconvenience" must be directed at the public peace as opposed to a specific individual such as the victim here. We agree.

¶ 15 "Pennsylvania is a 'code jurisdiction': it recognizes no common law crimes." *Commonwealth v. Reaser*, 851 A.2d 144, 148 (Pa.Super.2004), quoting *Commonwealth v. Booth*, 564 Pa. 228, 233–234, 766 A.2d 843, 846 (2001), *appeal denied*, 581 Pa. 674, 863 A.2d 1145 (2004).[5] " 'Necessarily, then, when the judiciary is required to resolve an issue concerning the elements of a criminal offense, its task is fundamentally one of statutory interpretation, and its overriding purpose must be to ascertain and effectuate the legislative intent underlying the statute.' " *Id.*, quoting *Booth*.

¶ 16 In interpreting a statute, we are guided by the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et seq.*, which directs that "the object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly." *Walker v. Eleby*, 577 Pa. 104, 123, 842 A.2d 389, 400 (2004), citing 1

4. In other words, she concedes that the Commonwealth proved beyond a reasonable doubt that "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, [s]he: (1) engage[d] in fighting or threatening, or in violent or tumultuous behavior," or used "obscene language." 18 Pa.C.S.A. § 5503(a)(1), (3); appellant's brief at 7–8.

5. In fact, the offense of disorderly conduct is uniquely a creature of statute as it has no common law predecessor. *See Comment*, "Public Disorder Offenses Under Pennsylvania's New Crimes Code," 78 Dick. L.Rev. 1, 17 (1973).

Pa.C.S.A. §§ 1903(a), 1921(b). "The clearest indication of legislative intent is generally the plain language of a statute." *Walker, supra.* "When words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S.A. § 1921(b). Thus, if the language of a statute is clear and unambiguous, a court must read its provisions in accordance with their plain meaning and common usage. *Commonwealth v. Becker,* 366 Pa.Super. 54, 530 A.2d 888, 890 (Pa.Super.1987) (*en banc* ).

▮ ¶ 17 Additionally, we note: "It is axiomatic that in interpreting a statute we may presume that the legislature did not intend an absurd or unreasonable result. We may therefore examine the practical consequences of a particular interpretation." *Commonwealth v. Davis,* 799 A.2d 860, 870 (Pa.Super.2002) (internal citations and quotation marks omitted). Legislative intent can only be derived by reading all sections of the statute together and in conjunction with each other and construed with reference to the entire statute. *Housing Auth. of County of Chester v. Pennsylvania State Civil Service Com'n,* 556 Pa. 621, 640, 730 A.2d 935, 945 (1999).

¶ 18 To interpret Section 5503(b) as it relates to the question presented in this appeal, we must first examine its statutory language, as well as the language of Section 5503 as a whole. *See Walker, supra.* Subsection (b) on grading the offense provides in pertinent part: "An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense." 18 Pa.C.S.A. § 5503(b).

¶ 19 The Commonwealth asserts that the word "public" does not appear in the grading portion of the statute. (Commonwealth's brief at 2.) The Commonwealth posits that "[t]his shows that the distinction the legislature intended to make between a misdemeanor and a summary offense is not between public and private harm, but rather in the degree of intended harm—between substantial harm and harm that is merely trivial." (*Id.*) We disagree.

▮ ¶ 20 While the word "public" is not included in the grading section, the indispensable ingredient of the offense itself is a *public* harm or a *public* inconvenience. The crime of "disorderly conduct," which appears in Article F., 'Offenses Against Public Order and Decency,' is aimed at protecting the general public against antisocial acts which violate standards of public order and decency. For instance, the offense of "public drunkenness," which also appears under this article, was not intended to punish all forms of drunkenness but only drunkenness in a public place to such a degree as to endanger the person himself or other persons or property or annoy persons in the vicinity. *Commonwealth v. Meyer,* 288 Pa.Super. 61, 431 A.2d 287, 289 (1981). Likewise, a panel of this court previously stated, the gravamen of the offense of disorderly conduct is the public impact that is either intended or recklessly risked. *Commonwealth v. Greene,* 410 Pa. 111, 115, 189 A.2d 141, 144 (1963).

> The crime of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. *It has a specific purpose; it has a definitive objective, it is intended to preserve the public peace;* it has thus a limited periphery beyond which the prosecuting authorities have no right to transgress any more than the

alleged criminal has the right to operate within its clearly outlined circumference. *Id.* at 117, 189 A.2d at 145 (emphasis added).

¶ 21 Looking to the statute itself, the term "public" is specifically contained in Subsection (a), which lists the elements necessary to be convicted of the offense of disorderly conduct. 18 Pa.C.S.A. § 5503(a). Subsection (c) defines the word "public," and immediately follows the grading subsection. The grading of the offense of disorderly conduct, Section 5503(b), which does not include the term "public," is correlated to the degree of the intended harm. When all of the sections of this statute are read together and in conjunction with the title and chapter where the statute is found, we are hard-pressed to conclude that the grading subsection would *subtract* the essential element of the crime when grading the offense as a third degree misdemeanor—the harshest punishment permitted under the statute.

¶ 22 The legislature clearly intended this statute to punish different degrees of disorderly conduct more harshly than others. By assigning a grade based on the actor's intent to cause different degrees of harm, the legislature is able to differentiate between two different acts that both qualify as disorderly conduct and to punish one more harshly than another. While the Commentary to MPC § 250.2 also does not include the word "public" in its discussion of grading, we find that it goes without saying that a lesser sanction is designated for behavior not specifically intended by the actor to affect the broader public peace. For instance, "the noisy family quarrel ... hardly warrants a jail sentence, even if it awakens the entire neighborhood." Model Penal Code and Commentaries, Part II, § 250.2 (ALI 1980).

¶ 23 Furthermore, as the drafters of the Model Penal Code ob-

served, this statute was intended to be cautiously applied:

> [Disorderly conduct] penalizes public nuisance. It is not designed to substitute for other offenses or to punish, without reference to the law of attempt, a wide variety of inchoate behavior. Neither is it intended to provide blanket authority for ridding the streets of undesirables. Instead, [this section] reflects an effort to limit disorderly conduct to specifically designated acts likely to create a public nuisance.

14 West's Pa. Prac., Crim. Offenses & Defenses D520 (5th Ed.), citing American Law Institute, Model Penal Code, § 250.2, Revised Commentary at 328 (1980). As the statute is intended to protect the public peace, we believe that the more severe punishment was clearly intended to apply for substantial harm *to the public* peace or serious inconvenience *to the public* peace.

¶ 24 Additionally, two prior panels of our court have interpreted Section 5503(b) to necessitate a showing of intent to cause substantial harm *to the public* or serious inconvenience *to the public* for the misdemeanor version of the offense. *See Smith, supra; Coon, supra.* In *Coon,* the defendant had been convicted of summary harassment and disorderly conduct graded as a third degree misdemeanor for shooting bullets toward his neighbor's rural home after the sound of gunfire related to target practice on the neighbor's property disturbed his afternoon nap. *Coon,* 695 A.2d at 796. The defendant appealed from the convictions, questioning the sufficiency of the evidence to support the misdemeanor disorderly conduct conviction. The panel in *Coon* framed the applicable inquiry as follows:

> To convict appellant on the charge of disorderly conduct as a misdemeanor of

the third degree, the Commonwealth was required to prove that appellant intended to cause substantial harm to the *public* or serious *public* inconvenience by his actions, or that he persisted in disorderly conduct after a reasonable warning or request to desist was made. 18 Pa.C.S. § 5503(b).

*Id.* at 798 (emphasis in the original). Pursuant to this standard, the defendant's conviction was reversed as the Commonwealth had failed to prove the required *mens rea* for the offense as the neighbor's private home did not meet the statutory definition of "public." *Id.* The panel also held that even if the offense element of "public" was met, the requisite *mens rea* was lacking, as appellant "denied any intent to cause serious public inconvenience or substantial harm to the public," *id.* at 798–799, and the circumstances indicated only that his actions "were directed at a lone individual ..." *Id.* at 799.

¶ 25 In *Smith, supra,* the defendant punched a man who had spoken of him derisively to a third party at a bar. The court quoted the statutory language of Section 5503 and quoted *Coon,* stating "to prove the misdemeanor version of the offense [of disorderly conduct], the statute requires a showing of specific intent 'to cause substantial harm to the *public* or serious *public* inconvenience.'" *Smith,* 811 A.2d at 580, quoting *Coon, supra* at 798 (emphasis in the original).

¶ 26 Instantly, our review of the evidence leads to the conclusion that appellant's disorderly conduct conviction should have been graded as a summary offense. The Commonwealth did not demonstrate that appellant's actions posed a wider threat or were intended to affect the other patrons of the bar. There is no indication her actions in the parking lot were intended to cause substantial harm or inconvenience to the general public. In this instance, there is simply no evidence that appellant's ambitions in goading on the fight ranged any further than harm to the victim's person, for which she was charged separately with simple assault. At the most, her actions created a *risk* of public inconvenience, annoyance, or alarm, a summary offense. Thus, the evidence is insufficient to prove the requisite intent to sustain the conviction graded as a third degree misdemeanor.

¶ 27 Judgment of sentence reversed and remanded for resentencing. Jurisdiction relinquished.

¶ 28 Orie Melvin, J. files a Dissenting Opinion which is joined by Joyce, Bowes, and Gantman, JJ.

Dissenting Opinion by ORIE MELVIN, J.:

¶ 1 I respectfully dissent. By inserting the word "public" into 18 Pa.C.S.A. § 5503(b) where it does not appear, the majority ignores the unambiguous plain language of the statute and violates the fundamental maxim of statutory interpretation that courts lack the authority to insert a word into a statutory provision where the Legislature has not done so. The majority also conflates the **offense** of disorderly conduct with its **grading** and, thus, finds support for its interpretation of Section 5503(b) in the broader context of the Crimes Code when such does not actually exist. For the reasons that follow, I would require the Commonwealth to prove beyond a reasonable doubt that a defendant charged with disorderly conduct graded as a misdemeanor of the third degree only intended to cause "substantial harm" or "serious inconvenience," and, thus, I would affirm the conviction.

¶ 2 In setting forth the governing rules of statutory interpretation, the majority acknowledges but then fails to actually

apply the foremost maxim of statutory interpretation—i.e., that "[t]he clearest indication of legislative intent is generally the plain language of a statute." Majority Opinion, at 898 (quoting *Walker v. Eleby,* 577 Pa. 104, 123, 842 A.2d 389, 400 (2004)). Our Supreme Court has repeatedly instructed that this maxim is the starting point for all issues of statutory interpretation. *See Commonwealth v. Dellisanti,* 583 Pa. 106, 112, 876 A.2d 366, 369 (2005) (stating, "[t]o determine the meaning of a statute, a court must first determine whether the issue may be resolved by reference to the express language of the statute."); *Kusza v. Maximonis,* 363 Pa. 479, 482, 70 A.2d 329, 331 (1950) (stating, "the court must ascertain and give effect to the legislative intention as expressed in the language of the statute."). The majority also fails to identify and apply the maxim of statutory interpretation which speaks most directly to the question before us— i.e., "[t]his Court is without authority to insert a word into a statutory provision where the legislature has failed to supply it." *Nimick v. Shuty,* 440 Pa.Super. 87, 655 A.2d 132, 136 (1995) (citing *Key Sav. and Loan Ass'n v. Louis John, Inc.,* 379 Pa.Super. 226, 549 A.2d 988, 991 (1988), *appeal denied,* 523 Pa. 632, 564 A.2d 1260 (1989)); *see also Kusza,* 363 Pa. at 482, 70 A.2d at 331 (stating that a court "cannot, under its powers of construction, supply omissions in a statute."). My analysis, in contrast, proceeds directly from these two maxims.

¶ 3 I begin by examining the specific statutory language of Section 5503(b) as well as the language of Section 5503 as a whole. Subsection (b) on grading the of-fense of disorderly conduct provides in pertinent part: "An offense under this section is a misdemeanor of the third degree **if the intent of the actor is to cause substantial harm or serious inconvenience....**" 18 Pa.C.S.A. § 5503(b) (emphasis added). Critically, the word "public" does not modify either "substantial harm" or "serious inconvenience;" indeed, the word "public" does not appear in the subsection on grading at all.

¶ 4 The word "public" is, however, contained in subsection (a), which lists the elements necessary to be convicted of the offense of disorderly conduct. *See* 18 Pa. C.S.A. § 5503(a) (providing, "[a] person is guilty of disorderly conduct if, with intent to cause **public** inconvenience, annoyance or alarm, or recklessly creating a risk thereof ....") (emphasis added). The portion on grading is contained in a separate subsection from the offense itself and, thus, suggests that the offense and its grading necessitate separate inquiries. I believe it is a fundamental error to conflate the two.[6] Subsection (c), in turn, defines "public" and immediately follows subsection (b) but does not, merely by dint of placement, suggest that the defined term must be extrapolated into a preceding subsection which does not contain the defined term. I believe that the definition of "public" in subsection (c) is properly read only in conjunction with subsection (a), which actually contains the defined term. I also note that while both subsection (a) and subsection (b) contain the word "inconvenience," the word is modified by different adjectives in each subsection. *Compare* 18 Pa.C.S.A. § 5503(a) (requiring "public inconvenience")[7] with § 5503(b)

---

6. That the majority does such is best shown by its direct quotation from *Commonwealth v. Greene,* 410 Pa. 111, 117, 189 A.2d 141, 145 (1963), Majority Opinion at 11, and from the Revised Commentary, Model Penal Code

§ 250.2, at 328 (ALI 1980), Majority Opinion, at 12–13, both of which discuss the public nature of the offense itself, not its grading.

7. "Public" in subsection (a) obviously modifies "inconvenience," "annoyance," and

(requiring "serious inconvenience"). Overall, my examination of the plain text of Section 5503 convinces me that the statute is explicit on the question at hand and does not require the Commonwealth to prove beyond a reasonable doubt that a defendant intended to cause substantial harm **to the public** or serious inconvenience **to the public** in order to be convicted of the misdemeanor version of the offense.

¶ 5 My conclusion is bolstered by a review of the language and structure of the provisions for disorderly conduct found in the Model Penal Code (MPC). Section 5503 was enacted as part of the Crimes Code in 1972 and modeled on MPC Section 250.2 *See* 18 Pa.C.S.A. § 5503, Official Comment—1972 (noting "[t]his section is derived from Section 250.2 of the Model Penal Code."); *see also Commonwealth v. Gilbert,* 449 Pa.Super. 450, 674 A.2d 284 (1996) (looking to MPC Section 250.2 and commentary in determining that the unreasonable noise prohibited by 18 Pa.C.S.A. § 5503(a)(2) is directed at the volume of speech, not its content); *Commonwealth v. Maerz,* 879 A.2d 1267 (Pa.Super.2005) (same). Of particular importance, MPC Section 250.2, entitled "Disorderly Conduct," has a slightly different structure than Section 5503. It provides:

(1) Offense Defined. A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(a) engages in fighting or threatening, or in violent or tumultuous behavior; or

(b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present; or

(c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

"Public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, or any neighborhood.

(2) Grading. An offense under this section is a petty misdemeanor if the actor's purpose is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a violation.

MPC § 250.2.

¶ 6 The structure of MPC Section 250.2, which places the definition of "public" within the subsection defining the offense, but before the separate subsection on grading, provides a clear indication that the word "public" was not intended by the drafters of the model provision to modify "substantial harm" or "serious inconvenience," as those phrases appear in the subsection on grading. The Explanatory Note accompanying MPC Article 250 (Riot, Disorderly Conduct and Related Offenses) notably does not use "public" to modify either "substantial harm" or "serious inconvenience" nor does it provide any other indication that such was the intent of the model provision's drafters. *See* Explanatory Note for Sections 250.1–250.12, Official Draft and Explanatory Notes (providing, in pertinent part, that "[a]nother significant innovation in the law of disorderly conduct is the reduction of the offense to a violation, which does not authorize imprisonment, unless the actor's

"alarm." *See Commonwealth v. Young,* 370 Pa.Super. 42, 535 A.2d 1141, 1143 (1988).

purpose is to cause substantial harm or serious inconvenience or unless he persists in disorderly conduct after reasonable warning or request to desist, in which case the offense is a petty misdemeanor."). Similarly, Commentary to MPC Section 250.2 does not in its discussion of grading the disorderly conduct offense mention any requirement that the required harm or inconvenience be to the public:

> *Grading:* Section 250.2 of the Model Code classifies the ordinary case of disorderly conduct as a violation. The offense, however, is a petty misdemeanor 'if the actor's purpose is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist.' This scheme is designed to retain the sanction of incarceration for behavior indicative of serious fault by the accused but to withdraw the threat of imprisonment in all other cases. The noisy family quarrel, for example, hardly warrants a jail sentence, even if it awakens the entire neighborhood.

MODEL PENAL CODE AND COMMENTARIES, Part II, § 250.2 (ALI 1980) (footnotes omitted). I glean from the commentary to the model provision that the grading of the offense of disorderly conduct was keyed to the degree of the intended harm, not to whether it was aimed at the public.

¶ 7 Further, and unlike the majority, I do not find that an examination of Section 5503(b) in the fuller context of its placement in Article F, Chapter 55 of the Crimes Code, evidences an intent that the offense be **graded** as a misdemeanor of the third degree only if the actor intended to cause substantial harm **to the public** or serious inconvenience **to the public.** As a general matter, and as relevant here, one of the purposes of the Crimes Code of 1972 was "[t]o safeguard conduct that is without fault from condemnation as criminal." 18 Pa.C.S.A. § 104(2). Thus, the public disorder offenses of riot (18 Pa.C.S.A. § 5501), failure of disorderly persons to disperse upon official order (18 Pa.C.S.A. § 5502), and disorderly conduct (18 Pa. C.S.A. § 5503),[8] became intent-based offenses. Another important purpose of the Crimes Code of 1972 was to "differentiate on reasonable grounds between serious and minor offenses." 18 Pa.C.S.A. § 104(5). This differentiation, as one commentator has accurately described, was built into the present statutory scheme for the public disorder offenses:

> [T]here appears in the new [Crimes] Code [of 1972] a rational gradation of the offenses which was wholly absent from the 1939 Penal Code. To replace the sometimes imponderable definitions of the past law, the new Code offers a

---

8. These three offenses are those most logically grouped for purposes of this inquiry. Section 5501 was modeled on MPC § 250.1 and derived from Section 401 of the Pennsylvania Penal Code of 1939. It is graded as a felony of the third degree. See 18 Pa.C.S.A. § 5501 Official Comment—1972. Section 5501 differed from its statutory predecessor in that "the offense [under the Crimes Code of 1972 was] specifically defined by restricting it to participation in a course of disorderly conduct in *specified circumstances* [and] intent or knowledge [was] now a requisite element in those specified circumstances [and] riot [had] become a felony of the third degree[.]"

Comment, "Public Disorder Offenses Under Pennsylvania's New Crimes Code," 78 DICK L.REV. 1, 28 (1973) (footnotes omitted) (hereinafter "Public Disorder Offenses"); *see also* 18 Pa.C.S.A. § 5501 Official Comment—1972. Section 5502, which arises only when a person participating in a course of disorderly conduct refuses or knowingly fails to obey an order to disperse, is graded as a misdemeanor of the second degree in every instance. Section 5502 was derived from MPC § 250.1 and was an entirely new offense, having no statutory predecessor. *See* 18 Pa.C.S.A. § 5502 Official Comment—1972.

sensible separation of violent group behavior, which is inherently more dangerous, from the less serious offenses of individual disorderliness. Incumbent upon the success of any such statutory scheme is the need for a corresponding graduated scale of punishment. The new Code sections provide for this by punishing the potentially most dangerous offense of group violence [i.e., riot] most heavily and the least dangerous act of individual unruliness [i.e., disorderly conduct] most lightly. It is fair as well as rational to 'provide aggravated penalties for disorderly conduct where the number of participants makes the behavior especially alarming' to the community.

Thus, the new Code provides for a graduated pattern of offenses and punishments according to the seriousness of the acts and the number of participants involved. Each offense is grounded on the intent of the individual actor. **Once the intent is established the punishment is made commensurate with the threat to the community as demonstrated by the nature of the act or the number of people involved.** The individual act of disorderly conduct is subjected to relatively light penalties upon conviction. Where three or more individuals participating in disorderly conduct fail to disperse upon a reasonably given official order, their potential penalty is greater. And when the disorderly conduct of three or more individuals acting in concert reaches the level of the four specific instances designated as riot, the penalty is most severe.

"Public Disorder Offenses," 78 DICK. L.REV. at 30–31 (footnotes omitted, emphasis added) (citing Model Penal Code § 250.1—Comment (Tent. Draft No. 13, 1961)).

¶ 8 Thus, I perceive from the broader statutory grouping of Sections 5501, 5502, and 5503 that grading for the public disorder offenses is tied to a legislative determination that disorderly conduct involving three or more persons (i.e., riot) is the most harmful to the community and that disorderly conduct by a single individual not grounded in an intent to cause "substantial harm" or "serious inconvenience" is the least harmful to the community. The statutory structure thus provides for four levels of punishment: third degree felony (§ 5501), second degree misdemeanor (§ 5502); third degree misdemeanor (§ 5503(b) for individual disorderly conduct accompanied by intent to cause "substantial harm or serious inconvenience"); and summary offense (§ 5503(b) for individual disorderly conduct unaccompanied by intent to cause "substantial harm or serious inconvenience"). Nothing intrinsic to this structure suggests that the intent to cause "substantial harm or serious inconvenience" required for the misdemeanor version of the Section 5503 offense must be aimed at the public. Indeed, by assigning a grade based on the actor's intent to cause different degrees of harm, the legislature is able to differentiate between two different acts (both of which constitute the offense of disorderly conduct under Section 5503) and to punish one more harshly than the other. This is clearly what our legislature (and the drafters of the Model Penal Code provisions upon which our public disorder offenses are modeled) intended.

¶ 9 Thus, my examination of the plain language of Section 5503(b) and the statutory section as a whole, as well as the section's placement in the broader context of the Crimes Code, convinces me that the word "public" does not and was not intended to modify "substantial harm or serious inconvenience" as those terms relate to grading the offense under Section 5503(b). I do not believe this interpretation is in

any way absurd or unreasonable; rather, it implements the plain language of the statute.

¶ 10 I recognize that two prior panels of this Court have read Section 5503(b) as does the majority, but, believe the foregoing analysis exposes the flaw in that interpretation. This Court, sitting *en banc,* may overrule a decision of a three-judge panel of this Court. *See Commonwealth v. Smith,* 772 A.2d 75, 78 n. 7 (Pa.Super.2001) *(en banc), rev'd on other grounds sub nom. Commonwealth v. Gatling,* 570 Pa. 34, 807 A.2d 890 (2002). It may also disapprove of statements or rationale contained in prior decisions of a three-judge panel without overruling them. *See Commonwealth v. Miller,* 430 Pa.Super. 297, 634 A.2d 614 (1993) *(en banc )* (disapproving of the rationale and statements contained in numerous prior decisions of this Court). Thus, after careful consideration of *Commonwealth v. Coon,* 695 A.2d 794 (Pa.Super.1997), and *Commonwealth v. Smith,* 811 A.2d 578 (Pa.Super.2002), I would disapprove of select statements in *Coon*[9] and overrule *Smith* which obviously relied upon *Coon's* erroneous statement of the law. My position is consistent with *Commonwealth v. Reynolds,* 835 A.2d 720 (Pa.Super.2003), in which a panel of this Court, without citing *Coon* or *Smith,* upheld a conviction for disorderly conduct against a sufficiency of the evidence challenge where the defendant "acting in a public place [outside a tavern], threatened the life of his victims with a gun, thereby actually creating a risk of public alarm." *Id.* at 731.

¶ 11 My interpretation of Section 5503(b) requires that I next consider whether the evidence here was sufficient to support the conviction for disorderly conduct graded as a third degree misdemeanor.[10] I readily conclude that it was. At trial, the victim testified that while Jack Schmader was yelling and poking him in the chest, Appellant was standing behind Schmader, loudly and coarsely urging him to "hurt" or "f— up" the victim. N.T. Trial, 3/12/04, at 11–13. She was obviously quite agitated as her boyfriend, Eric Hutchinson, was observed trying to calm her down. *Id.* at 13. She then helped Schmader and Hutchinson leave the scene of the assault.[11] *Id.* at 17. A jury could reasonably infer from this evidence, which is both direct and circumstantial, that Appellant intended through her obnoxious goading to cause "substantial harm" or "serious inconvenience" within the meaning of 18 Pa.C.S.A. § 5503(b). Accordingly, I conclude that the conviction is supported by sufficient evidence and would affirm the judgment of sentence.

---

**9.** Specifically, I disapprove of that portion of *Coon* which interpreted Section 5503(b) such that both "substantial harm" and "serious inconvenience" were modified by "public." *See Coon,* 695 A.2d at 798. I would not overrule *Coon,* however, as the reasoning given to support reversal in *Coon* can also be read to depend on the Commonwealth's failure to prove the public element of the offense itself under Section 5503(a).

**10.** In reviewing a sufficiency of the evidence claim, "we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to determine whether there is sufficient evidence to enable the factfinder to find every element of the crime established beyond a reasonable doubt." *Commonwealth v. Hartle,* 894 A.2d 800, 803–04 (Pa.Super.2006).

**11.** While Schmader testified that Appellant was not at the scene of the assault and that he left alone in his Jeep, N.T. Trial, 3/12/04, at 102, 104–05, the jury obviously disbelieved his version of events. It is the province of the fact-finder to believe some, all, or none of the evidence and to assess the credibility of every witness. *See Hartle,* 894 A.2d at 804.