J-A28006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.M. | : | |
| | : | |
| Appellant | : | No. 1792 MDA 2017 |

Appeal from the Order Entered October 31, 2017
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
11871-2917

BEFORE:  LAZARUS, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED DECEMBER 07, 2018**

M.M. appeals from the trial court's final protection from abuse (PFA)[1] order entered against him in the Court of Common Pleas of Luzerne County. The order, effective for three years, prevents M.M. from having any contact with C.D. and orders M.M. to relinquish all firearms and any firearms' license to the sheriff.  After careful review, we affirm based on the opinion authored by the Honorable Tina Polachek Gartley.

At the time of the underlying incident, M.M. and C.D. had been involved in a romantic relationship, from May to June 2017, culminating in M.M. asking C.D. to move in with him.  When C.D. refused the offer, M.M. became extremely angry, "[s]creaming [and] thrashing about," frightening C.D.  N.T. PFA Hearing, 10/31/17, at 25.  C.D. testified that after she rebuked his offer,

_____

[1] **See** 23 Pa.C.S. §§ 6102-6122 (Protection from Abuse Act ("PFAA")).

M.M. cut the phone lines and other wires to her house, placed a half-lit M-80 firecracker under her vehicle, shredded the front tire to her car, contacted C.D.'s employers pleading for them to convince C.D. to return to M.M., contacted C.D.'s oldest daughter pleading to speak with her mom, and grabbed C.D.'s wrist when they were on a boat with friends and told her to be obedient and sit down. *Id.* at 5-10, 27-28. C.D. also testified that M.M.'s actions "[s]cared [her] t[o] death," that she was still "[t]errified" of him at the PFA hearing, that she had to have a friend help her to take protective measures in her house, and that she changed all the locks to her house and blocked M.M. from every social media account as well as her cell phone. *Id.* at 11-13.

At the hearing, M.M. denied all the alleged abusive actions recounted by C.D. M.M. testified that he had in fact called some of C.D.'s employers, but only to have them pray for her because "[s]he thinks I'm trying to do something to her or something." *Id.* at 35.

At the conclusion of the PFA hearing, the trial judge placed the following findings on the record in support of a PFA order:

> The court here today has considered the evidence presented in this hearing. The court has to make a credib[ility] determination and sometimes it's on circumstantial evidence as we all understand what that is[.]

> The court in consideration of the testimony presented finds that [C.D.] is credible. That [M.M's] not going to abuse, harass, st[al]k or threaten her. This is going to be effective today, the 31st day of October, 2017. It will expire the 31st day of October, 2020.

This is done after a hearing and a decision by the court. The court grants the plaintiff's request for a final protective order. [M.M.] will not abuse, st[al]k, harass, threaten or contact [C.D.] You're excluded from her property. . . .

Or have any contact with any of her employers.

\* \* \*

I'm going to indicate [that the guns in your house are] going to be taken by the sheriff. . . . [Y]ou're not going to be allowed to get another weapon for three years.

\* \* \*

[W]hat I'm doing now is he can't have any contact with you or anybody who you work for. He knows who they are. Stay away.

*Id.* at 40-44.

M.M. filed a timely notice of appeal from the PFA order and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He presents the following issues for our consideration:

(1)    Whether the evidence was insufficient[2] to support entry of an Order for Protection from Abuse in that C.D. produced no

_____

2 With regard to PFA orders, our Court:

[R]eviews the evidence in the light most favorable to the petitioner[, here, C.D.] and grant[s] her the benefit of all reasonable inferences, [in] determin[ing] whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence.

*Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1999) (quoting *Miller on Behalf of Walker v. Walker,* 665 A.2d 1252, 1255 (Pa. Super. 1995)). A preponderance of the evidence standard is defined as the greater weight of the evidence, i.e., to tip a scale slightly. *Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004). With this standard in mind, we also recognize that it is the trial court's duty to assess the credibility of the witnesses; if the trial court's

> evidence M.M. attempted to cause or intentionally, knowingly or recklessly caused her bodily injury or placed her in reasonable fear of imminent serious bodily injury.
>
> (2) Whether C.D. failed to sustain her burden of proof by a preponderance of the evidence as C.D., *inter alia*, confirmed that M.M. never physically abused[3] her, and never threatened her with physical violence.
>
> (3) Whether the [c]ourt below committed an error of law and/or abuse of discretion in finding C.D. credible and in not finding M.M. credible when C.D. provided repeated inconsistent testimony and testified to numerous unsubstantiated allegations of property damage.
>
> (4) Whether the [c]ourt below committed an error of law and/or abuse of discretion, based on the fact that its finding of abuse was contrary to the credible evidence of record.
>
> (5) Whether the [c]ourt below committed an error of law and/or abuse of discretion by allowing C.D. to present inadmissible evidence over the objection of M.M.'s counsel.
>
> (6) Whether the [c]ourt below committed an error of law and/or abuse of discretion by prejudging liability on behalf of M.M.

_____

findings are supported by competent evidence, we are bound by them. ***Coda v. Coda***, 666 A.2d 741, 743 (Pa. Super. 1995).

[3] Abuse is defined under the PFA, in part, as:

> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> \*   \*   \*
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S. § 6102(a)(2).  An individual need not actually suffer serious bodily injury to prove abuse under subsection (a)(2).  Rather, the key issue is whether M.M's actions put C.D. in reasonable fear of imminent serious bodily injury.  ***Raker***, ***supra***.

before all the evidence was presented, exhibiting bias toward him, and providing leading questions to C.D. to assist her in proving her case, despite the fact that she was represented by counsel?

Appellant's Brief, at 3-4.

After a review of the parties' briefs, the certified record, and the relevant case law and statutory authority, we affirm the trial court's PFA order based on the well-written opinion authored by the Judge Gartley.[4]  We instruct the parties to attach a copy of Judge Gartley's decision in the event of further proceedings in the matter.

Order affirmed.

Judge Musmanno joins this Memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/07/2018

---

[4] Although this case was originally heard by the Honorable Linda K.M. Ludgate, she was no longer assigned to the Luzerne County trial court bench after she issued the PFA order and M.M. filed his notice of appeal.  However, because Judge Ludgate made findings of fact on the record at the PFA hearing, we find that Judge Gartley's decision adequately addresses and disposes of M.M.'s issues on appeal.

## IN THE COURT OF COMMON PLEAS
## OF LUZERNE COUNTY

| | | |
|---|---|---|
| C.  ·· N D  , | | |
| Plaintiff | : | CIVIL ACTION-LAW |
| vs. | : | NO. 11871-2017 |
| M.  _M⁻ | : | |
| Defendant | : | |

### OPINION

On October 13, 2017, C( ··· ) D········ ("Plaintiff") filed a Petition for Protection from Abuse ("PFA"), and a temporary order was issued on October 24, 2017.[1]  A final order was entered on October 31, 2017, against M··· M····· ("Defendant"), for a period of three (3) years by Senior Judge Linda Ludgate.

Thereafter, on November 20, 2017, Defendant filed a Notice of Appeal to the Superior Court of Pennsylvania from the Order dated October 31, 2017, granting Plaintiff's Protection from Abuse.  On January 26, 2018, an order was issued directing Defendant to file of record a Concise Statement of Errors Complained of on Appeal, pursuant to Pa. R.A.P. 1925(b), and serve a copy of same upon Plaintiff and this Court pursuant to Pa. R.A.P. 1925(b)(1).  The Order required the Statement to concisely identify each ruling or error Appellant intends to challenge with sufficient detail to identify all pertinent issues for the Judge to consider.  Further, the Order provided that

[1] This case was heard by Ludgate as a Senior Judge assigned to Luzerne County.  Judge Ludgate is no longer assigned to Luzerne County and the case was transferred to this Court for appellate process.

1

any issue not properly included in the Concise Statement and timely filed and served within thirty (30) days of the date of the Order shall be deemed waived pursuant to Rule 1925(b).

On February 13, 2018, Defendant, through his Counsel, timely filed a Concise Statement of Matters Complained of on Appeal. Defendant's appeal issues are as follows:

1. Whether the evidence was insufficient to support entry of an Order for Protection from Abuse, in that the Plaintiff produced no evidence Defendant attempted to cause or intentionally, knowingly or recklessly caused her bodily injury or placed her in reasonable fear of imminent serious bodily injury?

2. Whether the Appellee failed to sustain her burden of proof by a preponderance of the evidence as Appellee, *inter alia*, confirmed that the Appellant never physically abused her, and never threatened her with physical violence?

3. Whether the court below committed an error of law and/or an abuse of discretion in finding Appellee credible and in not finding Appellant credible, when Appellee provided repeated inconsistent testimony and testified to numerous unsubstantiated allegations to property damage?

4. Whether the Court below committed an error of law and/or an abuse of discretion, as its finding of abuse was contrary to the credible evidence presented?

5. Whether the court below committed an error of law and/or abuse of discretion by allowing Appellee to present inadmissible evidence over repeated objection of Appellant's counsel?

6. Whether the Court below committed an error of law and/or abuse of discretion by prejudging liability on behalf of the Appellant before all the evidence was presented, exhibiting bias toward him, and providing leading questions to the appellee in an attempt to assist her in proving her case, despite the fact she was represented by counsel?

This brief Opinion pursuant to Pa. R.A.P. 1925(a) follows.

2

## LAW AND ARGUMENT:

The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advanced prevention of physical and sexual abuse. *See Mescanti v. Mescanti*, 956 A.2d 1017 (Pa. Super. 2008). The Superior Court's standard of review for PFA orders is well settled:

> In the context of a PFA order, the Court reviews the trial court's legal conclusions for an error of law or abuse of discretion." *Drew v. Drew*, 870 A.2d 377, 378 (Pa. Super. 2005) (quoting *Ferri v. Ferri*, 854 A.2d 600, 602 (Pa. Super. 2004)). When interpreting statutes, "we exercise plenary review." *Commonwealth v. Fedorek*, 913 A.2d 893, 896 (Pa. Super. 2006) (citing *Commonwealth v. Magliocco*, 584 Pa. 244, 883 A.2d 479, 481 (2005).

*Ferko-Fox v. Fox*, 68 A.3d 917, 920 (Pa. Super. 2013).

When a claim as to the sufficiency of the evidence is raised to the entry of an order for protection, the court "reviews the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence." *Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004) (citing *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1999). The Superior Court "defers to the credibility determinations of the trial court as to witnesses who appeared before it." *Id.*

When evaluating the preponderance of the evidence, the standard "is defined as the greater weight of the evidence, i.e., to tip a scale slightly is the criteria or requirement for preponderance of the evidence." *Id. (*citing *Commonwealth v. Brown*, 786 A.2d 961, 968 (Pa. 2001).

3

### ISSUES 1 & 2:

1. Whether the evidence was insufficient to support entry of an Order for Protection from Abuse, in that the Plaintiff produced no evidence Defendant attempted to cause or intentionally, knowingly or recklessly caused her bodily injury or placed her in reasonable fear of imminent serious bodily injury?

2. Whether the Appellee failed to sustain her burden of proof by a preponderance of the evidence as Appellee, *inter alia*, confirmed that the Appellant never physically abused her, and never threatened her with physical violence?

Issues (1) and (2) will be addressed together as they deal with the sufficiency of the evidence.

A PFA order may be issued "to bring about a cessation of abuse of the plaintiff...." 23 Pa. C.S.A. § 6108(a). The PFA Act's definition of abuse includes:

"Abuse." The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

23 Pa. C.S.A. § 6102(a)(1)-(2). Furthermore, "[t]he victim of abuse need not suffer actual injury, but rather be in reasonable fear of imminent serious bodily injury." *Burke ex rel. Burke v. Bauman*, 814 A.2d 206, 208–09 (Pa. Super. 2002). The objective is to determine "whether the victim is in reasonable fear of imminent serious bodily injury.... [The] intent [of the alleged abuser] is of no moment." *Raker*, 847 A.2d at 725.

4

The testimony at the hearing established that the Plaintiff lives in Mountain Top, Pennsylvania and the Defendant lives in Lake Wallenpaupack, Pennsylvania. (Notes of Testimony, In re: Transcript of Proceedings, October 31, 2017, (Ludgate, Sr.V.J.) (hereinafter "N.T.___") at 12). The Plaintiff and the Defendant were in a relationship for approximately three (3) to four (4) weeks, starting around May 2017. (N.T. 3, 4-5).

During the brief relationship, the Plaintiff noticed the Defendant exhibiting aggressive behavior. She attested that on one (1) occasion while on a boat, the Defendant "grabbed [Plaintiff's] wrist and told [her] to be obedient and sit down." (N.T. 27-28). The Defendant's behavior escalated in early June 2017, when the Defendant asked the Plaintiff to move in with him and the Plaintiff "adamantly said no." (N.T. 5, 11). After the Plaintiff rejected the Defendant's offer, the Defendant became angry, violent, and physical, by "screaming, thrashing about." (N.T. 11, 24-26). The Plaintiff attested that the Defendant's "tantrum" ended when he "stormed out of the house" and slammed the door. This behavior terrified the Plaintiff. (N.T. 11, 24-26).

After Plaintiff rejected the offer to move in together, the Defendant began harassing her. At that same time period a series of incidents began that caused her fear. On approximately June 20, 2017, the Plaintiff's home phone and internet lines were cut. (N.T. 6, 17-18). Around the same time, the Plaintiff discovered that her family bible was stolen from her house and the Defendant was the only person who had access to her residence. (N.T. 5, 7). On July 13, 2017, the Plaintiff found a half lit M-80 firework under her truck. (N.T. 6-7, 19). On July 30, 2017, the Plaintiff's automobile tire new tire was sliced. (N.T. 20, 29-31). The Plaintiff asked the Defendant about the sliced tire and he gave her a "ten minute dissertation of how it could have been done to [her]

5

tire with the use of other mechanical tools that [she] wouldn't know was happening." (N.T. 31-32). The Defendant's response frightened the Plaintiff and she attested that the response was "not normal." (N.T. 31-32). Throughout the entire relationship, the Defendant "constantly harass[ed] [Plaintiff] with text message incessantly during the day." (N.T. 11-12). The Plaintiff ultimately ended the relationship sometime at the end of July or beginning of August 2017. (N.T. 6, 17, 28, 32).

After the relationship ended, the Defendant contacted the Plaintiff's associates and family members. The Plaintiff is a self-employed business owner. Her business is owns Doluc's Cleaning, which entails cleaning residential and commercial buildings for clients. (N.T. 7). On August 17, 2017, Defendant contacted the Plaintiff's clients, Button Oil and Lawrence Cable Company. (N.T. 7-8). The defendant admitted contacting her clients as follows:

A: I spoke with Mrs. Button asking her to pray, and also Bob that I knew him from when we went out one evening for an event with Colleen and that's how I knew him.

Q: What did you talk to him about?

A: Well, I was under the understanding he was a Christian man and I just asked him please pray for the situation with Colleen. She thinks I'm trying to do something to her or something. (N.T. 35).

On October 12, 2017, the Defendant showed up in person at another client of the Plaintiff, Loftus-Vergari Associates, to talk to the employers about the Plaintiff. (N.T. 9-10). On October 6, 2017, Defendant contacted Plaintiff's daughter's church in Philadelphia in an attempt to obtain the address of Plaintiff's daughter. The Plaintiff attested that her daughter attends church approximately three and a half (3.5) hours away from the residence of Defendant. Further, and "counseling." (N.T. 8-10, 22-23).

6

Specifically, the Defendant admitted several times during the course of the hearing that he did contact Plaintiff's clients asking the individuals to "pray" for Plaintiff. (N.T. 36-37).

The Defendant also testified at the hearing, stating that he never "threatened to physically harm [Plaintiff]," or "threatened to do any damage to [Plaintiff's] property." (N.T. 34). The Defendant did not admit to cutting Plaintiff's phone and internet lines, stealing her bible, leaving an M-80 firework under Plaintiff's truck, or slicing Plaintiff's tire. (N.T. 33-35). However, he did state that he contacted the church in Philadelphia and contacted the Plaintiff's clients to ask them to "pray for the [Plaintiff's] situation." (N.T. 35, 36).

At the hearing, the Plaintiff stated that she is currently "terrified" of the Defendant, due to his violent behavior and aggressive actions towards her, her business clients, and her family. (N.T. 11, 12). The Plaintiff took "protective measures" to secure her home, including changing all the locks and blocking Defendant's phone number and social media account. (N.T. 12, 13). The Trial Court also noticed that the Plaintiff's voice was "shaky" while testifying as follows:

Q:   Is it your normal course to speak like you're speaking and short of shaky?

A:   I'm scared.

Q:   Do you have Anything that makes you scared, makes you shaky?

A:   Him staring at me. That's why I keep backing up. (N.T. 16).

The facts are similar to *T.K. v. A.Z.*, where an ex-husband repeatedly followed his ex-wife in his vehicle, in the grocery store, and at sporting events. *T.K. v. A.Z.*, 157 A.3d 974, 977 (Pa. Super. 2017). He repeatedly drove by his ex-wife's house and

7

ŀ

honked his horn, and he tried to yell to his ex-wife while talking to their children on the telephone despite a court order requiring him to communicate through a court-monitored application. *Id.* The evidence supported a finding that the ex-husband's conduct placed the ex-wife in reasonable fear of bodily injury; as the ex-wife testified that she could not sleep, she had people walk her to and from her car at work, she felt threatened when her ex-husband got angry, she wondered if her ex-husband would shoot her, and she feared that the ex-husband's behavior would escalate from stalking and harassment to causing her bodily harm. *Id.*

It is clear from *T.K. v. A.Z.*, that the record in the present case supports the PFA Order. The Plaintiff attested to her fear of the Defendant and noted the basis of that fear in Defendant's violent and angry tantrums, his efforts to follow her and his ongoing contact with her clients, family members and church officials asking them to "pray" for her.

The testimony, as noted above, provided the necessary elements of abuse as defined by the statute. The review of the record and testimony clearly indicate that the Plaintiff proved the allegations of abuse by a preponderance of the evidence.

The Defendant argues throughout the issues presented that his testimony was credible and the court erred in a variety of ways by not believing his version of the events. As stated throughout this opinion, the trier of fact determines credibility. The Plaintiff was deemed credible and the finding of abuse is based upon credible testimony of record. Thus, the evidence was sufficient to support a PFA order.

Accordingly, these issues lack merit and should be denied.

8

ı

ISSUE 3:

3. Whether the court below committed an error of law and/or an abuse of discretion in finding Appellee credible and in not finding Appellant credible, when Appellee provided repeated inconsistent testimony and testified to numerous unsubstantiated allegations to property damage?

In the third issue, Defendant alleges that the court erred in its credibility determinations. Our appellate courts generally defer "to the credibility determinations of the trial court as to witnesses who appeared before it." *Raker*, 847 A.2d at 724. Moreover, it is well established that the finder of fact is free to believe all, part, or none of the evidence, and it is within the province of the trial judge, sitting without a jury, to judge credibility of the witnesses and weigh their testimony. *Commonwealth v. Carter*, 546 A.2d 1173, 1182 (Pa. Super. 1988). Consequently, credibility determinations are generally not subject to review. *Id.*

During the hearing in the instant case, this Court found that Plaintiff stated with a great deal of credibility that she is "terrified" of the Defendant, due to his violent behavior and aggressive actions towards her, her business clients, and her family. (N.T. 11, 12). The Trial Judge noted that the Plaintiff was shaky and her voice sounded frightened while in the courtroom in the presence of the Defendnat. (N.T. 16). The series of events that occurred, including the cut phone and internet lines, the stolen bible, the M-80 firework under Plaintiff's truck, and the sliced tire, all occurred after the Plaintiff rejected Defendant's offer to move in with him.

Although Defendant testified that he did not threaten to physically harm Plaintiff or her property, and contacted Plaintiff's clients and family to "pray" for the Plaintiff, the Trial Court did not find him to be an entirely credible witness and deemed the testimony

9

of Plaintiff to be credible. Accordingly, the Trial Court did not err in its credibility determinations and this issue lacks merit and should be denied.

ISSUE 4:

4. Whether the Court below committed an error of law and/or an abuse of discretion, as its finding of abuse was contrary to the credible evidence presented?

Defendant's fourth issue speaks to whether this Court committed an error of law and/or abused its discretion. Defendant alleges that this Court's granting of a final PFA order was contrary to the credible evidence or against the weight of the evidence. When reviewing a trial court's actions in a PFA case, the appellate court is to review the trial court's legal conclusions for an error of law or abuse of discretion. *Ferko-Fox*, 68 A.3d at 920. Abuse of discretion is defined as follows: "Discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge." *Commonwealth v. Widmer*, 744 A.2d 745, 754 (Pa. 2000). An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable or the result of partiality, prejudice, bias or ill will." *Commonwealth v. Jackson*, 785 A.2d 117, 118 (Pa. Super. 2001).

Additionally, appellate review of a weight claim "consists of a review of the trial court's exercise of discretion, not a review of the underlying question whether the verdict is against the weight of the evidence." *Commonwealth v. Walsh*, 36 A.3d 613, 622 (Pa. Super. 2012). The appellate court is bound by the trial court's credibility determinations. *Karch v. Karch*, 885 A.2d 535, 537 (Pa. Super. 2005). As discussed

10

herein, the testimony at the PFA hearing established by a preponderance of the evidence that Defendant knowingly engaged in a course of conduct of repeatedly committing acts towards Plaintiff under circumstances which placed Plaintiff in reasonable fear of bodily injury. Thus, the verdict was not against the weight of the evidence.

Accordingly, this issue lacks merit and should be denied.

ISSUE 5:

5. **Whether the court below committed an error of law and/or abuse of discretion by allowing Appellee to present inadmissible evidence over repeated objection of Appellant's counsel?**

Defendant's fifth alleged error is based on three objections to hearsay evidence. First, Defendant objected to the Plaintiff's testimony that the Frontier phone serviceman told her that her phone lines were cut, which this Court overruled. (N.T. 6). Second, Defendant objected to letters from the Plaintiff's clients to the Plaintiff, which described the Defendant's conversations with the clients. (N.T. 7-8). Third, Defendant objected to a letter from the church to Plaintiff, detailing the Defendant's conversation with the church. (N.T. 9). This Court notes that it did not consider or base its decision on any inadmissible testimony or evidence not admitted into the record regarding letters from the clients and church to the Plaintiff. Therefore, this Court will examine the hearsay testimony regarding the Frontier phone serviceman.

It is clear that the admission or exclusion of evidence is within the sound discretion of the trial court and, reviewing a challenge to the admissibility of evidence, the appellate court will only reverse the trial court upon a showing that it abused its discretion or committed an error of law. *McManamon v. Washko*, 906 A.2d 1259, 1268

11

(Pa. Super. 2006). To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. *Id.* at 1268-69. Additionally, hearsay is a statement that the declarant does not make while testifying and is offered into evidence to prove the truth of the matter asserted. Pa. R.E. 801(c). Present sense impression is an exception to hearsay, and is defined as a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Pa. R.E. 803(1). The rationale for the exception is that the "declarant will have no opportunity for reflection or calculated misstatement because his declaration has been contemporaneous with the occurrence of the event to which the declaration refers." *Reichman v. Wallach*, 452 A.2d 501, 510 (Pa. Super. 1982). It is the "reflex product of immediate sensual impressions, unaided by retrospective mental action." *Id.* (citing *Commonwealth v. Coleman*, 326 A.2d 387, 389 (Pa. 1974)).

The present sense impression to the hearsay rule applies in this case. The Plaintiff testified that her phone and Internet lines were cut to her house:

> Q:      In June and you said I'm not living with you. When your phone lines
>         were cut you had to have somebody come and fix them, correct?
>
> A:      Yes, Ma'am. That's how I found out they were cut. They were
>         deliberately cut according to the Frontier phone service.
>
> Q:      Objection, Your Honor.
>
> THE COURT:      I'm going to accept it. She was standing there. The man
>                 said they were cut. It wasn't like they fell by a squirrel.
>                 (N.T. 6).

The Frontier serviceman's statement described the condition of Plaintiff's phone and internet lines. The statement was made directly after seeing the phone lines as he told the Plaintiff after his examination, which is how she discovered the lines were

12

deliberately cut. Thus, the hearsay testimony was admissible as it fell under the present sense impression exception.

Regardless, any error was harmless. Harmless error exists with respect to erroneously admitted evidence where:

(1) the error did not prejudice the defendant or the prejudice was *de minimis*; or

(2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or

(3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Hawkins*, 701 A.2d 492, 507 (Pa. 1997) (citing *Commonwealth v. Williams*, 573 A.2d 536 (Pa. 1990)). An erroneous ruling by a trial court on an evidentiary issue does not require an appellate court to grant relief where the error is harmless. *Commonwealth v. Northrip*, 945 A.2d 198, 203 (Pa. Super. 2008). Where the error is harmless, a new trial is not warranted. *Hawkins*, 701 A.2d at 507.

Here, the evidence of the Defendant's guilt was so overwhelming and the prejudicial effect of the error was so insignificant that the error did not contribute to the verdict. The record shows that Defendant was violent and angry at the Plaintiff for not moving in with him, followed her personal life and contacted numerous people associated with the Plaintiff including Plaintiff's clients and family member. The Plaintiff's testimony that she was terrified of the Defendant, whom she had a brief relationship with, and his actions after the parties separated amply support the granting of a PFA. Further, error, if any, as to the statements of the Frontier serviceman was harmless based on the credible testimony.

13

Accordingly, this issue lacks merit and should be denied.

## ISSUE 6:

6. Whether the Court below committed an error of law and/or abuse of discretion by prejudging liability on behalf of the Appellant before all the evidence was presented, exhibiting bias toward him, and providing leading questions to the appellee in an attempt to assist her in proving her case, despite the fact she was represented by counsel?

Defendant's sixth alleged error is baseless and wholly without merit. Pursuant to Pennsylvania Rules of Evidence 614(b), a judge may examine a witness in the interest of justice, regardless of who calls the witness. In the case at bar, the Court asked questions of both parties in an attempt to adduce testimony to determine whether the Petition was meritorious.

Accordingly, this issue lacks merit and should be denied.

## CONCLUSION:

Therefore, this Court's issuance of a PFA Order in this matter was warranted for the above stated reasons and the Defendant's Appeal should be DENIED.

## END OF OPINION

14