876 A.2d 366

COMMONWEALTH of Pennsylvania, Appellant

v.

Margaret DELLISANTI, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 20, 2004.

Decided June 21, 2005.

108

James W. Staerk, Bruce Lee Castor, Jr., Risa Vetri Ferman, Mary McNeil Killinger, Norristown, for the Com. of PA, appellant.

Peter Carr, for Philadelphia D.A.'s Office and PA D.A.'s Ass'n, appellant amicus curiae.

Michael James Reed, Paoli, for Margaret Dellisanti, appellee.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice NEWMAN.

The Commonwealth appeals from an Order of the Superior Court, reversing the Judgment of Sentence imposed by the Court of Common Pleas of Montgomery County ("trial court"). For the reasons that follow, we reverse the Order of the Superior Court and hold that because the meaning of the Corrupt Organizations Act is plain on its face, it was unnecessary to resort to statutory construction, and Appellee's conviction under the statute was proper.

## FACTS AND PROCEDURAL HISTORY

Appellee Margaret Dellisanti ("Dellisanti") owned a retail store, Main Changes, in Norristown, Pennsylvania, where she sold clothing, jewelry, and perfume. On September 14, 1999, Detective Erik Echevarria ("Detective Echevarria") of the Montgomery County Detectives Narcotics Enforcement Team ("NET"), who was working undercover, entered Main Changes intending to purchase plastic baggies and Inositol.[1] After observing that neither item was displayed nor offered for sale,

---

1. Inositol is a substance mixed with cocaine to dilute its purity; it is commonly known as "cut."

he approached the store manager, Tony Vallone ("Vallone"), and requested the items. Vallone proceeded to remove a small bottle of Inositol from under the counter. He showed Detective Echevarria a cardboard chart, also concealed from view, which displayed the various colors and sizes of baggies available for purchase.[2] Detective Echevarria purchased both Inositol and baggies.

Detective Echevarria returned to Main Changes on September 28, 1999, October 4, 1999, and October 20, 1999. Each time he purchased Inositol and baggies from either Vallone or Dellisanti. NET members later executed a search warrant for Main Changes, seizing boxes of Inositol, baggies, and other drug paraphernalia.

Dellisanti was subsequently charged with various crimes relating to the narcotics officers' investigation. After Dellisanti withdrew her *nolo contendere* plea, a two-day jury trial commenced. At trial, the officers testified that Inositol and the baggies were drug paraphernalia. The evidence also established that Dellisanti had a large quantity of drug paraphernalia on the premises, including: (1) 156 one-ounce vials of Inositol; (2) thousands of colored glassine baggies; (3) thousands of silver and gold smoking and cooking screens; (4) two bottles of Purafyzit;[3] and (5) fifty-seven cakes of Mannitol.[4] Additionally, the officers discovered tax records, invoices, ledgers, bank statements, and inventory records indicating the cost and value of the drug paraphernalia on the premises.

Dellisanti was found guilty of two counts of Corrupt Organizations,[5] five counts of Possession with Intent to Deliver Drug

2. During his testimony, Detective Echevarria explained that the color of a plastic baggie may indicate what geographic area that particular packet of narcotic comes from. (Reproduced Record (R.R.) Volume 1 at 42.). The size of the baggie may indicate the cost of the narcotic. *Id.*

3. Purafyzit is a substance ingested with the hope that it will prevent positive drug test results.

4. Mannitol is another dilutant used as cut. *See supra* note 1.

5. 18 Pa.C.S. §§ 911(b)(3) and (b)(4).

110

Paraphernalia,[6] and five counts of Criminal Conspiracy to Violate the Controlled Substance, Drug, Device and Cosmetic Act ("Controlled Substances Act").[7] By Order dated May 1, 2001, the trial court denied Dellisanti's Post–Verdict Motions for Judgment of Acquittal and for a New Trial. She was sentenced on June 7, 2001.

Dellisanti then filed a timely Notice of Appeal contending, *inter alia,* that the Corrupt Organizations convictions should not apply to a defendant based on facts like those in the instant case. She argued that the Corrupt Organizations Act ("Act"), 18 Pa.C.S. § 911, does not apply to a small business with no outside money infusion; rather, she averred, the Act was intended to apply only to organized crime. The trial court determined that her actions met the statutory requirements for the Corrupt Organizations charge.

On appeal to the Superior Court, Dellisanti claimed that the trial court erred by denying her Motion for Arrest of Judgment for Corrupt Organizations. The Superior Court held that the trial court did err, and that, although Dellisanti

6. Section 780–113 of the Controlled Substance, Drug, Device and Cosmetic Act states:
    (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
    (30) [e]xcept as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.
    The Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P.L. 233, No. 64, § 13, *et seq., as amended,* 35 P.S. § 780–113(a)(30).

7. Section 903 of the Pennsylvania Crimes Code states:
    (a) **Definition of Conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
    (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
    (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.
    18 Pa.C.S. § 903(a).

knowingly engaged in criminal behavior, she "was not involved in 'organized crime,' did not undertake 'the illegal use of force, fraud, and corruption,' and did not engage or conspire with others engaged in 'techniques of violence [and] intimidation.'" *Commonwealth v. Dellisanti*, 831 A.2d 1159, 1171 (Pa.Super.2003). The court concluded that Dellisanti was "not the type of criminal, and did not engage in the type of criminal conduct, which is the focus and purpose of the corrupt organizations statute." *Id.*

Judge Joyce filed a Concurring and Dissenting Opinion, joined by Judges Hudock, Stevens, and Graci, in which he disagreed with the Majority's holding regarding the Corrupt Organizations conviction. He opined that "the Majority [went] to great lengths to explain the **purpose and the reasons** for the enactment of the [Act]. . . . Yet, conspicuously absent from the Majority's discussion is any reference to the language of the statutory section under which Appellant was convicted." *Id.* at 1172 (emphasis in the original). Judge Joyce cited the lack of analysis or application of the language of the statutory section. *Id.* Labeling this approach "incorrect" and "flaw[ed]," he instead considered the express language of the statute, without resorting to the legislative findings of fact or history, and concluded that the evidence sufficiently established Dellisanti's violation of the Act. *Id.* at 1172, 1178.

Judge Joyce stressed the similarity between the instant case and *Commonwealth v. Rickabaugh*, 706 A.2d 826 (Pa.Super.1997), *petition for allowance of appeal denied*, 558 Pa. 607, 736 A.2d 603 (1999). In *Rickabaugh*, the Superior Court affirmed a conviction for a violation of the Act where the defendant intertwined an otherwise legitimate bar business with his illegal cocaine business. The court concluded that the statutory section pursuant to which the defendant was convicted was clear on its face. Based on the Superior Court's previous holding in *Rickabaugh*, Judge Joyce opined that the conviction of Dellisanti should stand. *Dellisanti*, 831 A.2d at 1178.

### DISCUSSION

█ In this case, we consider whether the decision of the Superior Court ignores the plain meaning of "organized crime" in the Act.[8] To determine the meaning of a statute, a court must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. 1 Pa.C.S. § 1903. "It is only when the words of the statute are not explicit on the point at issue that resort to statutory construction is appropriate." *City of Philadelphia v. Workers' Compensation Appeal Bd. (Williams)*, 578 Pa.207, 851 A.2d 838, 844 (2004) (internal citations omitted). However, basic principles of statutory construction demand that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit[,]" and legislative history may be considered only "[w]hen the words of a statute are not explicit. . . ." 1 Pa.C.S. § 1921(b)(1), (c)(8).

Dellisanti was convicted of violating subsections (b)(3) and (4) of the Act, which state in pertinent part:

(3) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

(4) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (1), (2) or (3) of this subsection.

18 Pa.C.S. § 911(b)(3) and (4). Therefore, the Commonwealth must prove that Dellisanti was engaged in a pattern of racketeering activity whose profits benefited an enterprise with which she was connected. In the instant case, the plain meaning of the statute amply establishes that Dellisanti's actions met its requirements.

**8.** Although the Superior Court addressed the instant issue as one of sufficiency of the evidence, the appropriate analysis is one of statutory construction.

■    First, Dellisanti engaged in a pattern of racketeering activity. Racketeering activity is defined as "any offense indictable under [the Controlled Substances Act]." 18 Pa.C.S. § 911(h)(1)(ii) (internal citations omitted). Racketeering activity occurs where there is any conspiracy to commit any of the offenses set fort at subsections (i) and (ii) of the Controlled Substances Act. 18 Pa.C.S. § 911(h)(1)(iii). Further, a "pattern of racketeering activity" is defined as "a course of conduct requiring two or more acts of racketeering activity one of which occurred after the effective date of the section." 18 Pa.C.S. § 911(h)(4).

■    The sale of drug paraphernalia is indictable under the Controlled Substances Act; consequently, selling drug paraphernalia is "racketeering activity." Dellisanti and Vallone engaged in at least four acts of selling drug paraphernalia from her store. These acts constitute a "pattern of racketeering activity" pursuant to the definition provided in the Act.

■    Second, Dellisanti's retail store constitutes an "enterprise," which is defined as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce and includes legitimate as well as illegitimate entities and governmental entities." 18 Pa.C.S. § 911(h)(3). We find that it is obvious that Dellisanti's store was a legitimate business entity engaged in commerce. Therefore, the "enterprise" requirement of the Act is satisfied.

■    Third, subsection (b)(3) of the Act, which requires the Commonwealth to prove that Dellisanti is associated with the enterprise in question, is satisfied because Dellisanti owned the retail store from which the drug paraphernalia was sold.

The Superior Court Majority erred when it ignored the plain meaning of the statutorily provided definitions and held that Dellisanti's conduct fell outside the scope of the Act, inasmuch as she "was not involved in 'organized crime,' did not undertake 'the illegal use of force, fraud, and corruption,' and did not engage or conspire with others engaged in 'techniques of violence [and] intimidation.'" *Dellisanti*, 831 A.2d at 1171.

The definition of organized crime and the elements of the offense set forth in Section 911(b) do not impose the limitations on the scope of corrupt organizations that the Superior Court applied.

■ Dellisanti avers that her conviction conflicts with the purpose of the Act. To support her argument, she relies on: (1) the prelude to the Act;[9] and (2) our holding in *Commonwealth v. Bobitski*, 534 Pa. 310, 632 A.2d 1294 (1993).

■ Dellisanti relies on the perceived purpose or spirit of the Act, which she maintains is delineated in its prelude, to argue that the trial court improperly convicted her of Corrupt Organizations. Nevertheless, reference to the rules of construction, "such as consideration of a statute's perceived 'object' or 'purpose' are to be resorted to only when there is an ambiguity." *Dept. of Transportation v. Taylor*, 576 Pa. 622, 841 A.2d 108, 112 (2004) (internal citations omitted). *See also*

9. The prelude states in pertinent part:

(a) **Findings of fact.**—The General Assembly finds that:

(1) organized crime is a highly sophisticated, diversified, and widespread phenomenon which annually drains billions of dollars from the national economy by various patterns of unlawful conduct including the illegal use of force, fraud, and corruption;

(2) organized crime exists on a large scale within the Commonwealth of Pennsylvania, engaging in the same patterns of unlawful conduct which characterize its activities nationally;

(3) the vast amounts of money and power accumulated by organized crime are increasingly used to infiltrate and corrupt legitimate businesses operating within the Commonwealth, together with all of the techniques of violence, intimidation, and other forms of unlawful conduct through which such money and power are derived;

(4) in furtherance of such infiltration and corruption, organized crime utilizes and applies to its unlawful purposes laws of the Commonwealth of Pennsylvania conferring and relating to the privilege of engaging in various types of business and designed to insure that such businesses are conducted in furtherance of the public interest and the general economic welfare of the Commonwealth;

(5) such infiltration and corruption provide an outlet for illegally obtained capital, harm innocent investors, entrepreneurs, merchants and consumers, interfere with free competition, and thereby constitute a substantial danger to the economic and general welfare of the Commonwealth of Pennsylvania; and

(6) in order to successfully resist and eliminate this situation, it is necessary to provide new remedies and procedures.

18 Pa.C.S. § 911(a).

*Garcia v. United States,* 469 U.S. 70, 76 n. 3, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984), *rehearing denied,* 469 U.S. 1230, 105 S.Ct. 1235, 84 L.Ed.2d 371 (1985) ("[r]esort to legislative history is only justified where the face of the [statute] is inescapably ambiguous ...") (internal citations omitted). In the instant case, we determine that there is no ambiguity in the meaning of the Act. Therefore, Dellisanti's argument that her conviction is not aligned with the purpose or spirit of the Act as delineated in the prelude is of no avail.

She also contends that our holding in *Bobitski* affords her relief. In *Bobitski,* the defendant was charged with, *inter alia,* Corrupt Organizations and Commercial Bribery as a result of bribes he solicited from various contractors over several years. His employer was not involved in the scheme, and all money garnered in this process directly and solely benefited the defendant. This Court held that "[i]t was clearly and explicitly the intent of the corrupt organizations statute to ferret out organized crime 'as it is commonly understood' and to severely punish those persons who engage in organized crime through a 'pattern of racketeering activity.'" *Id.* at 1296 (internal citations omitted). In affirming the Superior Court, we further noted that "[t]here are no facts alleged which lift the conduct of this particular white collar criminal out of the ordinary class of white collar criminals and make him appear to be part of the 'sophisticated, diversified, and widespread phenomenon' **defined in the statute as organized crime.**" *Id.* at 1297 (internal citations omitted) (emphasis added).

This Court also noted that under Pennsylvania law, as opposed to federal law, the Commonwealth is required to demonstrate a nexus between the individual and/or enterprise facing prosecution and organized crime. *See id.* at 1297 n. 2.

In 1996, two years after our decision in *Bobitski,* the Pennsylvania General Assembly amended the Act to, *inter alia,* define "organized crime" in unambiguous terms. *See* Corrupt Organizations Act of 1972, P.L. 1482 No. 334, § 1, *as amended* P.L. 342, No. 55, § 1, June 19, 1996 ("1996 Amendments"). Pursuant to the 1996 Amendments, organized crime

means "any person or combination of persons engaging in or having the purpose of engaging in conduct which violates any provisions of subsection (b) ..." 18 Pa.C.S. § 911(h)(8). It is clear that when Dellisanti and Vallone sold drug paraphernalia, which is a violation under subsection b, they engaged in "organized crime" as defined in the Act.

What Dellisanti fails to acknowledge and account for is the effect the 1996 Amendments had on the vitality of this Court's holding in *Bobitski*. The Amendments provided a new definition for "organized crime," which brought actions like those of Dellisanti's within the bounds of the Act. Once the General Assembly supplied this· definition of organized crime, we became obligated to apply the plain meaning of the definition provided by the legislature. *See Commonwealth v. Sitkin's Junk Co.*, 412 Pa. 132, 194 A.2d 199, 202 (1963) ("[w]e have long held that, where a statute contains its own definition, the meaning of the terms as defined at common law or as constructed under prior statutes is not controlling").

Although actions similar to those of Dellisanti may not have been criminal under the Act when this Court decided *Bobitski*, we cannot deny that her actions fall within the current boundaries of the Act. Dellisanti's argument that her conviction under the Act conflicts with our holding in *Bobitski* is meritless. This Court specifically noted that the definition of "organized crime" must guide any determination of guilt under the Act. *See Bobitski*, 632 A.2d at 1297. Hence, Dellisanti's second argument for relief fails.[10]

10. Dellisanti further asserts that the 1996 Amendments "did not address the pertinent holding in *Bobitski* as applied to our case[,] but addressed the holding rather [in] *Commonwealth v. Besch*," 544 Pa. 1, 674 A.2d 655 (1996). Brief of Appellee at 6. Specifically, she states that the 1996 Amendments "addressed the holding that the [Act] did not apply to a wholly corrupt enterprise, but only applied where there was pollution of a legitimate enterprise with corrupt money." Brief of Appellee at 7 (citing *Besch*).

Although Dellisanti is correct when she points out that the 1996 Amendments affected the decision of this Court in *Besch*, her conclusion that the 1996 Amendments addressed **only** that decision is both inaccurate and misleading. Not only did the 1996 Amendments affect our holding in *Besch* by allowing the Act to address both wholly illegitimate and partially legitimate enterprises, but they also changed

In accordance with the foregoing discussion, we reverse the Order of the Superior Court reversing the Judgment entered by the trial court and remand this matter for action consistent with this Opinion.

Chief Justice CAPPY files a dissenting opinion in which Justices CASTILLE and NIGRO join.

Chief Justice CAPPY dissenting.

The majority reinstates Appellee's conviction under the Pennsylvania Corrupt Organizations Act ("PaCOA"), 18 Pa. C.S.A. § 911, despite the absence of any evidence that Appellee is engaged in organized crime. The Majority posits that this result is required by its reading of the plain language of the PaCOA as specifically amended in response to the decision of this court in *Commonwealth v. Bobitski*, 534 Pa. 310, 632 A.2d 1294 (1993). (Majority opinion at p. 116, 876 A.2d at p. 372). As I cannot accept the Majority's position that the plain language of the amended Act requires this result, I respectfully dissent.

First, I note that the amendment in question occurred in June of 1996 and was specifically directed to the decision of this court in *Commonwealth v. Besch*, 544 Pa. 1, 674 A.2d 655 (1996),[1] not the earlier unanimous decision in *Bobitski*. Sec-

the definition of "organized crime," as noted *supra*, to include organizations such as Dellisanti's retail store, thus implicating *Bobitski*. Fundamentally, *Bobitski's* holding that the Act "punish[es] persons engaged in organized crime, not 'organized' criminals," *see Bobitski*, 632 A.2d at 1297, simply cannot be reconciled with the added statutory definition of organized crime, which is triggered by the engagement (or intent to engage) in prohibited activities as defined under the Act, *see* 18 Pa.C.S. § 911(h)(8), and not merely by participation in organized crime in the sense in which that phrase is commonly understood.

Even accepting Dellisanti's premise (and that of the dissent) that *Besch* was the sole impetus for the 1996 Amendments, *Besch* expressly highlighted *Bobitski's* restrained approach to the definition of organized crime as an analogous holding. *See Besch*, 674 A.2d at 660 (citing *Bobitski*, 632 A.2d at 1294). It should come as little surprise, then, that the legislature supplanted both holdings by way of a single set of amendments.

1. 1996, June, P.L. 342, No. 55, § 1, imd. effective. As directly noted in the remarks of then Senator Fisher on the floor of the Senate, the

ond, the amended language does not require an interpretation of the Act that divorces its operative intent, the ferreting out of organized crime, from its current application, the conviction of a person with no ties to organized crime.

When construing a statute, this court is guided by the rules set forth by the legislature. *See,* 1 Pa.C.S.A.1901 *et. seq.* The first of these rules establishes the basic principle by which the remainder of the rules of statutory construction must be applied. That rule provides:

> In the construction of the statutes of this Commonwealth, the rules set forth in this chapter shall be observed, unless the application of such rules would result in a construction inconsistent with the manifest intent of the General Assembly.

1 Pa.C.S.A. § 1901.

This principle guided us in our analysis in *Bobitski.* Bobitski was an employee of Thrift Drug who used his position within the business to solicit bribes from various contractors. There was no evidence linking Bobitski to organized crime. In reversing the conviction in *Bobitski,* we examined the statute in depth, noting with great deference, the long detailed preamble the legislature set forth. *Bobitski,* 632 A.2d at 1296. Because of the care and detail offered by the legislature in the section titled "Findings of fact," 18 Pa.C.S.A. § 911(a), the purpose, scope, and intent of PaCOA were explicitly outlined. That purpose was to ferret out and severely punish persons engaged in organized crime "as that term is commonly used." *Bobitski,* 632 A.2d at 1296. The *Bobitski* court unanimously rejected an interpretation of PaCOA that would permit the Commonwealth to use the statute as a means to enhance the penalty of any person who could conceivably, through an overly broad interpretation fall within its reach. *Id.* at 1297.

This court again examined PaCOA in *Besch.* In that instance, the court was faced with a wholly illegal criminal

amendments were required in response to the decision in *Besch,* wherein this court had found that the Act did not apply to wholly illegitimate criminal enterprises. *See,* S.B. 1172, 180th Legis.; Pa. Legis. Journal No. 36, at. pp. 2028–2029.

enterprise, narcotics distribution, and no evidence that the drug dealers uncovered in that investigation had any contacts with organized crime. *Besch,* 674 A.2d at 661. Focusing our decision on the words of the legislature, we observed that as written, the statute only discussed the operation and infiltration of legitimate business enterprises. *Id.* at 659. We were constrained by the clear directive of the language of the statute to apply it narrowly, and accordingly, reversed the convictions. *Id.* at 661.

In direct response to the decision in *Besch,* the legislature amended PaCOA to extend the reach of PaCOA beyond the infiltration of organized crime into legitimate businesses and to capture any wholly illegitimate enterprises run for profit through a pattern of racketeering activity. *See* 18 Pa.C.S.A. § 911(h)(3) (revising the definition of "enterprise" was revised to include legitimate as well as illegitimate entities), *Historical and Statutory notes,* of the 1996 amendment, June 19, P.L. 342, No. 55, § 1, imd. effective. The amendment specifically addressed the question before the court in *Besch;* it did not alter the validity of the reasoning employed by this court in *Bobitski.* Thus, the purpose and intent of PaCOA as recognized and effectuated in *Bobitski,* is as viable today as it was when that decision was announced.

In applying this law to the matter *sub judice,* we note that the evidence as adduced by the Commonwealth established that Appellee is the owner of a clothing store, a legitimate business enterprise. In the store, she maintained a supply of unadvertised items secreted behind the counter. Appellee and her employee sold this inventory of hidden drug paraphernalia in violation of the Controlled Substance, Drug, Device and Cosmetic Act. 35 P.S. § 780–113(a)(30). ("The Drug Act"). A person can commit racketeering activity by violating the Drug Act. 18 Pa.C.S.A. § 911(h)(1)(ii). Because of the fact that Appellee committed her crime from her business enterprise, she was charged under PaCOA for conducting her business through a pattern of racketeering activity. 18 Pa.C.S.A. §§ 911(b)(3) and (b)(4).

120

Yet there is no evidence that Appellee operated her business through the use of force, fraud, corruption, violence or intimidation, or that she or her business were connected to organized crime in any fashion as that term is used within PaCOA. 18 Pa.C.S.A. § 911(a). By simply plugging the crimes charged into the fact of the location of the criminal activity the majority arrives at the conclusion that Appellee's actions fit within the framework of PaCOA and reinstates the conviction. The majority's application of PaCOA to these facts undercuts the purpose and intent of PaCOA.

By interpreting this statute in a fashion that utilizes its words to reach a result unintended by the manifest intent of the legislature, the Majority is undoing what the legislature worked so diligently to do in the first place. This piece of legislation was never designed to enhance the penalty of any average criminal; it was cleverly and intelligently drafted to seek out and punish a specific segment of the society engaged in the heinous and nefarious business of organized crime. To assert that a conviction of the Appellee in this case reflects the plain language of PaCOA when such a result completely ignores the established legislative intent of the statute sets the concept of statutory construction on its head.

For the reasons stated above, I cannot endorse the rationale or result of the majority; accordingly, I am compelled to dissent.

Justices CASTILLE and NIGRO join this dissenting opinion.