[J-91-2024] [MO: Donohue, J.]
IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

| | | |
|---|---|---|
| JARRETT COLEMAN, | : | No. 33 MAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1416 |
| | : | CD 2022 dated November 8, 2023, |
| v. | : | Affirming and Reversing the Order of |
| | : | the Lehigh County Court of Common |
| | : | Pleas, Civil Division, at No. 2021 C- |
| PARKLAND SCHOOL DISTRICT, | : | 2666 dated November 17, 2022. |
| | : | |
| Appellant | : | ARGUED:  November 20, 2024 |

## DISSENTING OPINION

**CHIEF JUSTICE TODD**                          **DECIDED:  November 24, 2025**

I respectfully dissent.  I believe the resolution of the issue raised in this appeal to be uniquely problematic.  Employment of the traditional and typically used rules of statutory construction, which are mandatory on the judiciary in the interpretation of legislation in our Commonwealth, lead on one hand to a strained finding of ambiguity, as found by the Commonwealth Court, and, on the other hand, a result that, in my view, is inconsistent with the clear intent of the General Assembly, the approach taken by the majority.  However, because this is an exceptional matter, I believe the Court should invoke the rarely used, but extremely powerful, rule of statutory construction found in 1 Pa.C.S. § 1901 of the Statutory Construction Act of 1972 to resolve this appeal.

Section 1901 of the Statutory Construction Act is straightforward.  It serves as an introduction to all other rules of statutory construction, emphasizing the mandatory nature of these rules, but also allowing for an overarching exception to their application.  It provides:

> In the construction of the statutes of this Commonwealth, the rules set forth in this chapter shall be observed, *unless the application of such rules would result in a construction inconsistent with the manifest intent of the General Assembly*.

1 Pa.C.S. § 1901 (emphasis added). While simple in statement, this rule is potent. It makes clear that the polestar of statutory interpretation is to ascertain the intent of the legislature and that this function is so paramount that the quest for the General Assembly's intent may, in limited circumstances, override the rules of statutory construction themselves. That said, Section 1901 should be used in only the most extreme circumstances when it is eminently clear that application of the traditional rules of statutory construction would lead to a result that is plainly contrary to the unmistakable intent of the legislature. Nevertheless, I believe that resolution of the issue before us warrants its invocation. *See Commonwealth v. Goins*, 495 A.2d 527, 534 (Pa. 1985) (relying on Section 1901 and stating that "[b]ecause we find it to have been the manifest intent of the General Assembly to include as an aggravating circumstance more than one prior violent-felony conviction, it was error for the trial court to apply the 'singular/plural' rule of construction of 1 Pa.C.S. § 1902 which resulted in an inconsistent interpretation of 42 Pa.C.S. § 9711(d)(9)"); *Browning-Ferris, Inc. v. Department of Environmental Resources*, 598 A.2d 1061, 1064 (Pa. Cmwlth. 1991) (applying Section 1901 and finding that "the term 'party' cannot be reasonably construed as limited to the litigants; otherwise, there would be no need to intervene and no provision made therefor."); *see also Mohamed v. Commonwealth, Department of Transportation, Bureau of Motor Vehicles*, 40 A.3d 1186, 1197-98 (Pa. 2012) (Castille, C.J. dissenting) (recognizing that the plain language of a statute is generally the best indicator of legislative intent, however, offering alternative construction of clear statutory language where "the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest

intent of the General Assembly"); *see generally Commonwealth v. Fedorek*, 946 A.2d 93, 99-100 (Pa. 2008) (explaining that "[i]n the construction of the statutes of this Commonwealth, the rules set forth in [the Statutory Construction Act] shall be observed, *unless* the application of such rules would result in a construction inconsistent with the *manifest intent* of the General Assembly," citing 1 Pa.C.S. § 1901 (emphasis original)). *Commonwealth v. Shiffler*, 879 A.2d 185, 189-90 (Pa. 2005) ("Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. . . . *Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly.*" citing 1 Pa.C.S. § 1901 (emphasis added)).

Specifically, before us is the interpretation of Section 712.1 of the Sunshine Act, 65 Pa.C.S. § 712.1, entitled "Notification of agency business required and exceptions."[1]

---

[1] Section 712.1 provides:

> **(a) Official action.--**Except as provided in subsection (b), (c), (d) or (e), an agency may not take official action on a matter of agency business at a meeting if the matter was not included in the notification required under section 709(c.1) (relating to public notice).
>
> **(b) Emergency business.--**An agency may take official action at a regularly scheduled meeting or an emergency meeting on a matter of agency business relating to a real or potential emergency involving a clear and present danger to life or property regardless of whether public notice was given for the meeting.
>
> **(c) Business arising within 24 hours before meeting.--**An agency may take official action on a matter of agency business that is not listed on a meeting agenda if:

(continued…)

(1) the matter arises or is brought to the attention of the agency within the 24-hour period prior to the meeting; and

(2) the matter is de minimis in nature and does not involve the expenditure of funds or entering into a contract or agreement by the agency.

**(d) Business arising during meeting.--**If, during the conduct of a meeting, a resident or taxpayer brings a matter of agency business that is not listed on the meeting agenda to the attention of the agency, the agency may take official action to refer the matter to staff, if applicable, for the purpose of researching the matter for inclusion on the agenda of a future meeting, or, if the matter is de minimis in nature and does not involve the expenditure of funds or entering into a contract or agreement, the agency may take official action on the matter.

**(e) Changes to agenda.--**

(1) Upon majority vote of the individuals present and voting during the conduct of a meeting, an agency may add a matter of agency business to the agenda. The reasons for the changes to the agenda shall be announced at the meeting before any vote is conducted to make the changes to the agenda. The agency may subsequently take official action on the matter added to the agenda. The agency shall post the amended agenda on the agency's publicly accessible Internet website, if available, and at the agency's principal office location no later than the first business day following the meeting at which the agenda was changed.

(2) This subsection shall not apply to a conference or a working session under section 707 (relating to exceptions to open meetings) or an executive session under section 708 (relating to executive sessions).

**(f) Minutes.--**If action is taken upon a matter of agency business added to the agenda under this section, the minutes of the meeting shall reflect the substance of the matter added, the vote on the addition and the announced reasons for the addition.

65 Pa.C.S. § 712.1.

The majority somewhat begrudgingly recognizes the goal of the Sunshine Act is to bring transparency regarding government agency proceedings and maximize public participation. It details that the 2021 amendments to the Sunshine Act furthered this purpose by mandating a pre-meeting publication of an agenda, as well as certain narrow exceptions thereto. Majority Opinion at 2-5.

This appeal, however, turns on the interpretation of the term "or." The majority takes a plain language approach in interpretating the Sunshine Act. Indeed, when the statutory text is "clear" and unambiguous, our Court is prohibited from disregarding it "under the pretext of pursing its spirit." 1 Pa.C.S. § 1921(b). However, the majority's application of a plain meaning of "or" and its resultant implication that each clause in Section 712.1 must be considered independently, leads to a practical outcome that that is plainly contrary to the manifest intent of the General Assembly: to mandate transparency in governmental agency proceedings through notice of the substance of agency meetings via a published agenda.

Like the majority, I would find that the term "or" is not ambiguous and has a plain meaning that is commonly understood. Simply stated, the term "or" is accepted as a disjunctive setting forth choices or alternatives. *See* Merriam-Webster's Collegiate Dictionary (10th ed. 1996) (conjunction which is "used as a function word to indicate an alternative"). Indeed, this grammatical approach is consistent with long standing and contemporary usage.

Thus, while I agree with the majority that the plain and common meaning of the term "or" should be taken at face value — that is, as offering a choice or an alternative — I conclude that the application of that plain meaning would lead to an interpretation of the Sunshine Law that is inconsistent with the manifest intent of the General Assembly. This intent is unmistakable. Specifically, the General Assembly enacted the Sunshine Act to

ensure government transparency and the right to participate in a meaningful fashion in agency proceedings. The 2021 amendments undoubtedly took this intention one significant step further by requiring a pre-meeting agenda, with certain circumscribed exceptions. As persuasively set forth in greater detail in Justice Wecht's dissent, and notwithstanding the majority's protestations to the contrary, a reading of subsection (e) as an alternative exception would vitiate subsections (b), (c), and (d), effectively overriding them as narrow exceptions to the agenda requirement, rendering them practically redundant. *See* Dissenting Opinion, Wecht, J. at 2-3, 11.

Accordingly, I would eschew application of the traditional rules of statutory construction, and, through the interpretive power authorized in Section 1901, I, like Justice Wecht, would interpret subsections (b), (c), and (d) as substantive exceptions, and subsections (e) and (f) as procedural directions. See Dissenting Opinion, Wecht, J. at 9-11. Utilizing this approach would avoid a strained ambiguity analysis and result in an interpretation of Section 712.1 that is in accord with the manifest intent of the legislature. *See Commonwealth v. Dellisanti*, 876 A.2d 366, 374 (Pa. 2005) (Cappy, C.J., dissenting) ("By interpreting this statute in a fashion that utilizes its words to reach a result unintended by the manifest intent of the legislature, the Majority is undoing what the legislature worked so diligently to do in the first place. . . . [S]uch a result completely ignores the established legislative intent of the statute [and] sets the concept of statutory construction on its head.").

Thus, as I would affirm the decision of the Commonwealth Court, albeit on different grounds, by employing Section 1901 to reach a result that is consistent with the manifest intent of the General Assembly, I respectfully dissent.[2]

---

[2] Such an approach also neutralizes the accusation that the Commonwealth Court was not just interpreting the meaning of the term "or," but improperly rewriting the text and structure of Section 712.1. *See* Majority Opinion at 25. Moreover, such an approach (continued…)

would allow our Court to provide a consistent understanding of the meaning of terms rather than interpreting terms using a contextual approach that distorts the meaning of common words. *See*, *e.g.*, *In re Canvass of Provisional Ballots in 2024 Primary Election*, 322 A.3d 900, 906-07 (Pa. 2024) (finding term "shall" to be mandatory, but recognizing prior case law disregarding a mandatory requirement indicated by use of the word "shall"); *Lorino v. Workers' Compensation Appeal Board*, 266 A.3d 487, 493-94 (Pa. 2021) (comparing term "shall" with "may" and finding "shall" to be mandatory in context of award of attorney's fees); *MERSCORP, Inc. v. Delaware County*, 207 A.3d 855, 865-66 (Pa. 2019) ("Notwithstanding the general rule that 'shall' is mandatory, we are aware that the word 'shall' has also been interpreted to mean 'may' or as being merely directory as opposed to mandatory."); *Commonwealth v. Garland*, 142 A.2d 14, 17 n.5 (Pa. 1958) (noting "may" can mean the same as "shall," where a statute directs the doing of a thing for the sake of justice, however, is ordinarily used in the permissive sense); *Commonwealth ex rel. Bell v. Powell,* 94 A. 746, 748 (Pa. 1915) ("The word 'shall' in its ordinary sense, is imperative. . . . But the intent of the act controls, and, when the spirit and purpose of the act require the word 'shall' to be construed as permissive, it will be done.").