J-S14035-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK RODNEY CHILCOTE | : | No. 1431 MDA 2025 |

Appeal from the Order Entered October 9, 2025
In the Court of Common Pleas of Huntingdon County Criminal Division at
No(s): CP-31-CR-0000040-2025

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: MAY 28, 2026**

The Commonwealth of Pennsylvania appeals from the order granting the pre-trial petition for writ of *habeas corpus* filed by Appellee, Frank Rodney Chilcote. The Commonwealth argues that the trial court erred in concluding that chewing tobacco is not poison, and therefore, is not contraband pursuant to 18 Pa.C.S. § 5123(c) and 61 Pa.C.S. § 5902(a)(1). After review, we affirm.

The trial court provided a detailed recitation of the relevant facts and procedural history of this matter as follows:

> On the evening of January 13, 2025, [Appellee], then a corrections officer employed at the Huntingdon County Correctional Facility ("HCCF"), allegedly[FN1] smuggled a can of chewing tobacco into the facility and provided it to an inmate. HCCF is a tobacco-free facility, meaning no one is permitted to possess or use tobacco there, regardless of whether they are an inmate or an employee.
>
> > [FN1] The [c]ourt notes that the facts stated herein are accepted as true only for purposes of evaluating [Appellee's] *habeas* petition.

The Deputy Warden of HCCF became aware of the alleged smuggling when he observed indicators of suspicious activity involving both the inmate and [Appellee]. This led the Deputy Warden to review two recorded video calls from the evening of January 13th that occurred between the inmate and his son (who is not incarcerated). The two discussed and coordinated having the son meet a staff member from HCCF outside the facility at a location marked by a specific vehicle and handing that individual an item which would then be given to the inmate. Review of video recordings from HCCF's surveillance system showed [Appellee] going outside at the appointed time, standing next to his personal vehicle, meeting an individual on a bicycle, being handed something by that individual, and then returning to the facility to pass out laundry. While passing out laundry, [Appellee] then spent an extended period of time at the inmate's cell.

The Deputy Warden contacted the Huntingdon Borough Police Department, which dispatched an officer to investigate on January 14, 2025. A search of the inmate's cell was conducted by HCCF staff while the investigating officer was at the facility, and a can of Stoker's chewing tobacco was located under the inmate's mattress, along with loose tobacco wrapped in a paper towel. When confronted with this discovery, the inmate provided a written statement to the effect that [Appellee] would have the tobacco dropped off at his vehicle and then bring it inside the facility for use by inmates, and that he had done so twice previously while the inmate was housed at HCCF.

[Appellee], who has been terminated from his position at HCCF, was originally charged with one count of providing contraband to an inmate, non-controlled substance, 18 Pa.C.S. § 5123(c), graded as a misdemeanor of the first degree (Count 1). The criminal information was later amended to add an additional offense, contraband prohibited, alcohol and drugs, sold or given away, 61 Pa.C.S. § 5902(a)(1), graded as a felony of the first degree (Count 2).

[Appellee] filed a petition for writ of *habeas corpus*, challenging the Commonwealth's *prima facie* case on the grounds that tobacco is not a substance prohibited by either statute. The Commonwealth's response is that since tobacco contains nicotine, and nicotine can cause illness or death if ingested in a large enough quantity, it is a "poison," and poisons are expressly included in the substances prohibited by the relevant statutes for both Counts.

- 2 -

On May 29, 2025, a hearing was held on [Appellee's] petition. The Commonwealth presented the testimony of Dr. John G. Shepherd, a professor at the North Carolina School of Pharmacy and licensed pharmacist who specializes in clinical toxicology. Relevant here, his past employment includes just over five years spent as the Director of the North Texas Poison Center in Dallas, Texas, where he also served as a clinical toxicologist. Dr. Shepherd was accepted as an expert in the field of clinical toxicology. The Commonwealth also presented the testimony of HCCF Warden Bradley Glover.

The pertinent facts established at the hearing, solely for purposes of [Appellee's] petition, are as follows:

1. The item allegedly smuggled into HCCF by [Appellee] and found in the inmate's cell is a can of Stoker's long-cut wintergreen chewing tobacco. Nominally a 1.2 ounce can, when full it would contain 34 grams of tobacco by weight. N.T., *Habeas Corpus* Hearing, 5/29/25, at 4, 5.

2. The specific question that the Commonwealth asked Dr. Shepherd to evaluate, and the one that is the basis of his report, is whether "a 1.2 ounce can of Stoker's long cut wintergreen moist snuff would be capable of causing poisoning." *Id.* at 4. More specifically, as shown in Dr. Shepherd's report, this determination was to be made with regard to a man 5'5" tall weighing 120 pounds. Commonwealth's Exhibit 1 ("Shepherd Report"), at 1 (not paginated in the original).

3. A typical can of chewing tobacco will contain between 12 and 16 milligrams of nicotine per gram of tobacco. Thus, a full 34 gram can would contain between 408 and 544 milligrams of nicotine. N.T., Hearing, at 5.

4. Due to the slow absorption rate for nicotine from tobacco, simply eating a full can of tobacco would not be fatal. The experience of a person doing so "wouldn't be pleasant and [they] would likely vomit[], but assuming that they did that, they could, you know, get enough [nicotine] that they would have unpleasant effects." *Id.* at 6.

5. If, however, a person used some form of extraction method, they could obtain a much more concentrated dose of nicotine.

6. Using a "crude" water extraction method, an individual could extract about 12% of the nicotine in the tobacco, giving them a solution containing between 49 and 65 milligrams of nicotine. If this were stepped up to an "alkaline percolation" method, they could extract 50% of the nicotine and obtain between 204 and 272 mg of nicotine. Shepherd Report, at 1-2, 3; N.T., Hearing, at 5-7.

7. Dosing for nicotine is calculated in terms of milligrams per kilogram of body weight. A dose of 0.1 milligram per kilogram will produce "toxic effects" that include "agitation, excess secretions, nausea/vomiting, rapid heart rate and possibility tremors in adults who are naive to nicotine." Shepherd Report, at 3. If the dose is increased to 1 milligram per kilogram, "potentially life-threatening effects" will begin to occur, such as "cardiac dysrhythmias, coma, paralysis and seizures." At 10 milligrams per kilogram of body weight, "death becomes probable." *Id.*; N.T., Hearing, at 7, 8.

8. Using the 5'5" tall, 120 lbs. "victim" proposed by the Commonwealth, whose body weight converts to 54.5 kg[,] Dr. Shepherd calculated the probable doses using the two extraction methods he discussed in his report. The "crude" water extraction method, which could obtain up to 65 mg of nicotine from a full 34g can of tobacco, would produce a dose of up to 1.2 milligrams per kilogram. The "alkaline percolation" method, which could obtain up to 272 mg of nicotine from a full can, would produce a dose of up to 5 milligrams per kilogram. Shepherd Report, at 3.

9. Dr. Shepherd's conclusion, as expressed in his report, is as follows:

> [i]t [i]s my opinion that there is enough nicotine in a single can of moist snuff to cause harmful effects. If a person was to simply eat the entire can at one sitting they would likely experience mild to moderate toxic effects. Using either of the extraction methods, a single can would yield enough nicotine extract to produce significant adverse effects and possibly death. I would estimate that 4 cans of moist snuff and using an alkaline percolation method would be required to extract enough nicotine (about 1000 mg) to make death by ingestion probable.

*Id.* He reiterated this conclusion in his testimony. N.T., Hearing, at 8.

10. Per Dr. Shepherd, information on the two extraction methods that he discussed can be readily found in books and on the internet. *Id.* at 8. The "crude" water extraction method involves soaking the tobacco in water for forty-eight hours. The "alkaline percolation" method involves putting the tobacco in a coffee pot and then adding baking soda or another alkaline chemical to it. *Id.* at 6.

11. When asked to provide a general definition of a "poison," Dr. Shepherd's response was as follows:

> So really any substance can be a poison in a high enough amount. Even things that are essential to life like oxygen and water can be poisonous in sort of extreme conditions. **It's really the dose that defines whether a substance is going to be a poison or not.**

N.T., Hearing, at 7 (emphasis added). On follow up, he agreed that in the profession of clinical toxicology, nicotine is considered to be a poison. *Id.*

12. When asked whether tobacco, as opposed to nicotine, is a poison, Dr. Shepherd's initial response was as follows:

> It depends on the situation and the dose. So again, as I stated earlier, I believe any substance can be poisonous in a proper amount. So, you know, one cigarette is enough to put a small child in the hospital, so from that point of view I would say yes. Do people use tobacco products and not have life-threatening adverse effects? Yes. We see that happen every day as well. **It's the dose that makes the poison.**

*Id.* at 9-10 (emphasis added).

13. Asked for clarification as to when tobacco becomes a poison, meaning how much is required to reach that level, Dr. Shepherd maintained his focus on the dose of nicotine that results, as there is significant variability in every situation based upon the weight, age, and health characteristics of the person involved, the type of tobacco, the exposure route, etc. His ultimate conclusion is that

"[tobacco] becomes a poison when it's taken in large enough amount that somebody can absorb a dose of nicotine greater than .1 milligram per kilogram of body weight." *Id.* at 11-12. This is because "you can ... begin to see adverse effects as doses as low as [0.1 milligrams] per kilogram of body weight." *Id.* at 10 (emphasis added). "Significant toxicity" begins around 1 milligram per kilogram of body weight and "a likelihood of death" arises at doses of 10 milligrams per kilogram of body weight. *Id.*

14. Warden Glover testified for the limited purposes of establishing that the possession of tobacco is prohibited within HCCF for both inmates and staff. He did not know when the tobacco ban was put in place, but the facility has been tobacco-free since before he began working there. He was promoted to the position of Warden in July of 2021, and worked at HCCF for many years before that time. *Id.* at 16-18.

After hearing the testimony and legal argument presented by both parties, the court allowed the parties additional time to submit proposed findings of fact and conclusions of law. After review of the record, the applicable law, and the legal arguments submitted by the parties (including the Commonwealth's proposed findings of fact and conclusions of law, filed September 29, 2025), the court entered its order of October 9, 2025, granting [Appellee's] *habeas* petition and dismissing both charges.

Trial Court Opinion ("TCO"), 12/12/25, at 1-6 (some formatting altered).

The Commonwealth did not request reconsideration, and on October 10, 2025, the Commonwealth filed a timely notice of appeal. Both the Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

On appeal, the Commonwealth raises the following issue:

Whether the trial court erred as a matter of law and/or committed an abuse of discretion in granting [Appellant's] Petition for Writ of *Habeas Corpus* in finding that tobacco is not contraband under either 18 Pa.C.S. § 5123(c) or 61 Pa.C.S. § 5902(a)(1)?

Commonwealth's Brief at 4 (some formatting altered).[1]

We review the Commonwealth's issue bearing in mind the following

principles:

> We review a decision to grant a pretrial petition for a writ of *habeas corpus* by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth. We then ask whether the Commonwealth presented at the preliminary hearing a *prima facie* case of the crime charged. A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense. Whether the Commonwealth has presented a *prima facie* case is a question of law. Statutory interpretation is also a question of law. Our scope of review is therefore plenary, and our standard of review is *de novo*.

***Commonwealth v. Derr***, 293 A.3d 671, 678 (Pa. Super. 2023) (internal

citations omitted and formatting altered). For purposes of our discussion, we

will address the elements of 18 Pa.C.S. § 5123(c) and 61 Pa.C.S. § 5902(a)(1)

separately.

## 18 Pa.C.S. § 5123(c)

The Commonwealth first argues that tobacco is poison, and as such, it

is contraband pursuant to 18 Pa.C.S. § 5123(c). Section 5123(c) provides as

follows:

---

[1] The Commonwealth's Rule 1925(b) statement was similar to the issue presented in its appellate brief, and it read in pertinent part, as follows: "The trial court erred as a matter of law or abused its discretion in granting [Appellant's] Petition for Writ of Habeas Corpus in finding that tobacco is not contraband under either 18 Pa.C.S. § 5123(c) or 61 Pa.C.S. § 5902(a)(1)." Rule 1925(b) Statement, 10/20/25 (single page).

**(c) Contraband other than controlled substance.--**A person commits a misdemeanor of the first degree if he sells, gives or furnishes to any convict in a prison, or inmate in a mental hospital, or gives away in or brings into any prison, mental hospital, or any building appurtenant thereto, or on the land granted to or owned or leased by the Commonwealth or county for the use and benefit of the prisoners or inmates, or puts in any place where it may be secured by a convict of a prison, inmate of a mental hospital, or employee thereof, any kind of spirituous or fermented liquor, medicine or **poison** (except the ordinary hospital supply of the prison or mental hospital) without a written permit signed by the physician of such institution, specifying the quantity and quality of the substance which may be furnished to any convict, inmate or employee in the prison or mental hospital, the name of the prisoner, inmate or employee for whom, and the time when the same may be furnished, which permit shall be delivered to and kept by the warden or superintendent of the prison or mental hospital.

18 Pa.C.S. § 5123(c) (emphasis added).

The Commonwealth contends that its expert, Dr. Shepherd, concluded that nicotine is considered poison and that a dose of more than one milligram per kilogram of body weight in a person is potentially life-threatening, and at ten milligrams per kilogram of body weight, the dose may be lethal. As such, if an individual extracted the nicotine from four cans of tobacco, it could constitute a lethal dose of nicotine. Commonwealth's Brief at 11-12. Further, the Commonwealth cites the unpublished case of *Commonwealth v. Gains*, 1331 WDA 2023, 2025 WL 841159 (Pa. Super. filed March 17, 2025) (unpublished memorandum), to support its argument that tobacco is poison. *Id.* at 15. The Commonwealth argues that in *Gains*, the Superior Court considered whether the bug repellant Diethylmetatoluamide, commonly referred to as DEET, was a poison under 18 Pa.C.S. § 5123(c). *Id.* In its

brief, the Commonwealth notes that in **Gains**, the Superior Court concluded that DEET, a substance harmful to humans if ingested, was poison within the scope of Section 5123(c). **Id.** The Commonwealth argues that the definition of poison for purposes of 18 Pa.C.S. § 5123(c) should thus include substances that are generally prohibited by inmates to possess and can be harmful if ingested. **Id.** at 16.

Section 5123(c) does not define poison. However, when a term is not defined, it does not *ipso facto* render it ambiguous. **Commonwealth v. Phillips**, 344 A.3d 360, 368 (Pa. 2025). Rather, the reviewing court may "inter alia, consult the dictionary, which is one tool that this Court uses to apprehend a term's plain meaning." **Id.** (internal quotation marks and citation omitted); **Commonwealth v. Dellisanti**, 876 A.2d 366, 369 (Pa. 2005) (stating that "[t]o determine the meaning of a statute, a court must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words"). The Merriam-Webster Online Dictionary defines poison in relevant part as follows: "a substance that through its chemical action **usually** kills, injures, or impairs an organism." Merriam-Webster Online Dictionary at https//www.merriam-webster.com/dlctionary/poison (last visited April 29, 2026) (emphasis added).[2]

---

[2] This definition from the Merriam-Webster Online Dictionary was cited in both **Gains** and in the TCO. **See Gains**, 2025 WL 841159, at *7, n.11; TCO at 13.

Utilizing this definition for poison, the trial court explained:

> As applied to DEET, this definition would at first appear to run counter to the conclusion reached by the **Gains** Court. DEET is not a pesticide, but rather an insect repellent and does not kill or injure the target insects. However, the **Gains** Court implicitly looked to the purpose for which the DEET was to be smuggled into the prison—ingestion via smoking in order to get "high"—in order to make its determination that DEET is a "poison" within the meaning of § 5123(c). **See Gains**, 2025 WL 841159 at *7 (citing the testimony of an investigator who had contacted the local poison center for the prison and obtained information that DEET is harmful to humans if ingested). Thus, even assuming **Gains** is either controlling or, at the least, strongly persuasive, the chewing tobacco at issue in the instant case does not fit the definition of "poison" advocated by the Commonwealth. Nowhere has the Commonwealth alleged facts to support the inference or conclusion that the tobacco in question was smuggled into HCCF to be used in any manner other than its ordinary and common purpose. (*i.e.*, there is no evidence that the inmate who received the tobacco intended to extract the nicotine and somehow weaponize it)[.]

TCO at 17-18 (footnote omitted).[3]

---

[3] Although the **Gains** Court concluded that DEET was poison, the circumstances in **Gains** are readily distinguishable from the case at bar. As noted, **Gains** involved the deliberate misuse of DEET, which is a chemical insect repellant, that an inmate intended to smoke for its intoxicating effect rather than apply to skin or clothing for its intended purpose. It was that intended misuse and ingestion, not the mere presence of a potentially toxic chemical compound, that led the **Gains** Court to conclude DEET qualified as a poison under 18 Pa.C.S. § 5123(c). **See Gains**, 2025 WL 841159, at *7. Notably, **Gains** did not address whether DEET in its ordinary usage to repel insects, as opposed to it being misused and ingested, would similarly constitute a poison. **Gains** likewise makes no mention of tobacco or its component nicotine. Here, there is no evidence that the chewing tobacco was intended for any purpose other than its ordinary use. The Commonwealth has pointed to nothing in the record suggesting that Appellee or the recipient intended to extract nicotine or misuse the tobacco in the manner central to the **Gains** Court's reasoning. In any event, even to the extent **Gains** could be read more broadly, it is an unpublished decision and therefore carries no binding precedential weight.

Further, the words tobacco and nicotine are not synonyms and not interchangeable, and as the trial court noted, there was no evidence of anyone distilling or extracting nicotine from the tobacco. *See* TCO at 18. The trial court acknowledges that tobacco contains nicotine, but it concludes that labeling tobacco a poison because it contains nicotine would lead to absurd results. *Id.* at 15-16. Indeed, the trial court concludes that the Commonwealth's argument would render criminal the possession of items such as toothpaste containing fluoride. *Id.* at 16. Expanding on this point, the trial court notes that Commonwealth's expert testified that even water in large amounts can be toxic. *Id.* at 5, 16.

The Commonwealth's proposed construction would violate the presumption that the General Assembly does not intend absurd results, *see* 1 Pa.C.S. § 1922(1), by rendering criminal the delivery of any substance, including fluoride toothpaste and potable water, whose constituent components may be toxic in large quantities. Such an interpretation is untenable.

After review, we agree with the trial court's conclusion. Appellee brought a can of commercially available moist snuff tobacco into the prison. For the reasons set forth above, we conclude that tobacco is not poison pursuant to 18 Pa.C.S. § 5123(c), and it is therefore, not contraband under the statute. Accordingly, the Commonwealth's argument fails.

- 11 -

## 61 Pa.C.S. § 5902(a)(1)

The Commonwealth next argues that tobacco is poison and a drug under 61 Pa.C.S. § 5902(a)(1). Commonwealth's Brief at 26, 38-39. Section 5902(a)(1) provides as follows:

> **(a) Alcohol and drugs.--**No spirituous or fermented liquor, drug, medicine, **poison**, opium, morphine or any other kind or character of narcotic shall, on any pretense whatever:
>
> > (1) be sold or given away in a correctional institution or in any building appurtenant thereto, or on the land granted to or owned or leased by the Commonwealth for the use and benefit of inmates[.]

61 Pa.C.S. § 5902(a)(1) (emphasis added). The Commonwealth argues that Appellee brought nicotine, which it contends is both a drug and a poison, into a correctional facility to be sold or given away in violation of 61 Pa.C.S. § 5902(a)(1). Commonwealth's Brief at 26, 39.

Upon review, because the term poison is not defined in 61 Pa.C.S. § 5902, we conclude that our discussion and disposition with respect to 18 Pa.C.S. § 5123(c), applies to our analysis under 61 Pa.C.S. § 5902(a)(1) as well. Indeed, as stated above, tobacco and nicotine are distinct substances, and equating the two would produce absurd results criminalizing the delivery of fluoride toothpaste, drinking water, and other ordinary products whose components are toxic only in large quantities. That construction is untenable under 1 Pa.C.S. § 1922(1). Accordingly, commercially available chewing tobacco is not poison under 61 Pa.C.S. § 5902(a)(1).

Regarding the Commonwealth's argument concerning whether tobacco, due to its nicotine content, is a drug, the Commonwealth states:

> On this issue, the Commonwealth notes that at no time, did [Appellee] raise the issue of whether nicotine was a drug under 61 Pa.C.S. § 5902(a)(1). Thus, the Commonwealth submits that the [t]rial [c]ourt abused its discretion by dismissing Count 2 of the Criminal Information, 61 Pa.C.S. § 5902(a)(1), as [Appellee] never raised the issue, and the scope was limited to whether tobacco was a poison for purposes of the statute.

Commonwealth's Brief at 30 (formatting altered). We agree that the trial court did not address whether tobacco, or nicotine for that matter, was a drug under 61 Pa.C.S. § 5902(a)(1) as the issue was not raised before the trial court. We note that the Commonwealth, as the appellant in this matter, did not raise this issue until it was presented in its appellate brief. Moreover, as the appellant, it was the Commonwealth's responsibility to present and preserve issues for appellate review. *See* Pa.R.A.P. 1925(b)(4)(ii) (stating "[t]he Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge"). Issues not raised in a timely filed Rule 1925(b) statement are waived. *See* Pa.R.A.P. 1925(b)(4)(vii) (providing that issues not included in the concise statement are waived on appeal); *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) (holding that "[a]ppellants must comply whenever the trial court orders them to file a Statement of [Errors] Complained of on Appeal pursuant to Rule 1925[, and a]ny issues not raised in a 1925(b) statement will be deemed waived"); *see also* Pa.R.A.P. 302(a) (providing that issues not raised in the trial court are waived and cannot be raised for the first time

on appeal). Because the Commonwealth as the appellant did not raise the issue of whether tobacco or the nicotine therein is a drug in its Rule 1925(b) statement, and the trial court was not afforded the opportunity to address the issue in the first instance, we conclude that the issue is waived.[4]

In any event, and similar to our discussion above concerning whether nicotine is a poison, we conclude that categorizing tobacco as a drug under 61 Pa.C.S. § 5902(a)(1), merely because it contains nicotine, is unsound. For instance, tea, coffee, cola, and chocolate all contain caffeine, and it is axiomatic that caffeine is a drug.[5] The Commonwealth's broad position here regarding what drugs are or may be criminalized under 61 Pa.C.S. § 5902(a)(1) would lead to absurd results. *See* 1 Pa.C.S. § 1922(1).

For the reasons set forth above, we discern no error in the trial court's decision. Accordingly, we affirm the order granting Appellee's petition for *habeas corpus*.

---

[4] We note that Section 5902 has a specific subsection addressing tobacco as contraband. *See* 61 Pa.C.S. 5902(d). However, the Commonwealth did not charge Appellee with violating Section 5902(d). We thus agree with the trial court's conclusion that due to the Commonwealth's failure to charge Appellee under Section 5902(d) "[a]ny discussion of whether [Appellee's] actions constitute a violation of § 5902(d) [is] therefore academic." TCO at 26.

[5] *See* Caffeine, Wikipedia, The Free Encyclopedia, https://en.wikipedia.org/wiki/Caffeine, (last visited April 29, 2026).

- 14 -

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/28/2026